## THE CITY OF NEW HAVEN vs. JOSEPH B. SARGENT.

Whenever the performance of a public duty is imposed upon any person or corporation, the powers necessary for its full performance are impliedly if not expressly and specifically given.

The duty of laying out, making, and maintaining public highways has been imposed upon the towns in which they are situate, and the power of such towns to remove material from place to place upon their highways, for purposes of construction, improvement, or repair, and their right to do so, are commensurate with the duty imposed and the limits of the highways, and paramount to the rights of adjoining proprietors, and presumptively that right was paid for when the land was subjected to the easement.

A *fortiori* is this true of cities on which a similar duty is imposed, and which are specially authorized by their charters to grade their streets.

Therefore where a new street was laid out in the city of New Haven across land of the respondent, from which it was necessary to remove earth in order to reduce the street to a proper grade, which earth the city required and intended to use to fill up a hollow in a neighboring street, on a petition for an injunction to restrain the respondent from excavating and removing the earth and applying it to his own use, Held that the relief prayed for ought to be granted.

PETITION for an injunction to restrain the respondent from excavating and removing earth from a highway in the city of New Haven; brought to the Court of Common Pleas in New Haven county, and reserved for the advice of this court.

On the 11th day of May, 1870, the city of New Haven laid out a new street, or highway, within the limits of the city, called Punderson street, about two thousand feet in length, of which about seven hundred feet was laid out over land of the respondent. The grade of that portion of the street laid out over the respondent's land required to be reduced by removing the earth to an average depth of three feet, in order to fit the street for public travel.

The board of compensation of the city of New Haven duly appraised the damages and assessed the benefits caused by the lay-out of the street, and therein found the damages and benefits to the respondent to be equal.

No part of the surplus earth to be excavated in Punderson street adjacent to respondent's land was required in the construction of Punderson street, but the city required and in-

tended to use it to fill up a hollow in another street called Derby avenue, near to but not connected with Punderson street.

Soon after the lay-out the respondent began to excavate and remove the surplus earth from the street adjacent to his land, using it to fill up a hollow on the same piece of land, and was engaged in so doing when restrained by this injunction.

*Doolittle* and *W. L. Bennett,* for the plaintiff, cited *Smith* v. *The Corporation of Washington,* 20 How., 148 ; *Woodruff* v. *Neal,* 28 Conn., 165 ; *Chapin* v. *Sullivan R. R.,* 39 N. H., 571 ; *Felch* v. *Gilman,* 22 Verm., 38 ; *Connecticut & Passumpsic Rivers R. R. Co.* v. *Holton,* 32 id., 43 ; *Tucker* v. *Tower,* 9 Pick., 109 ; *Brainard* v. *Clapp,* 10 Cush., 6 ; *Stevens* v. *The Proprietors of the Middlesex Canal,* 12 Mass., 466 ; *Barclay* v. *Howell's Lessee,* 6 Pet., 498 ; *Prather* v. *Ellison,* 10 Ohio, 396 ; *Imlay* v. *Union Branch R. R. Co.,* 26 Conn., 255 ; *Harback* v. *City of Boston,* 10 Cush., 296 ; *O'Connor* v. *Pittsburgh,* 18 Penn. St. R., 187 ; *Skinner* v. *Hartford Bridge Co.,* 29 Conn., 523 ; *Townsend* v. *Hoyle,* 20 id., 1 ; *Commonwealth* v. *Tewksbury,* 11 Met., 55.

*J. S. Beach,* for the defendant.

1. The owner of land over which a new highway is laid out, retains the exclusive title to the land over which it is so laid out, and to all its appurtenances, including the herbage, trees, and soil thereof, and can exercise and enjoy his exclusive ownership, as far as is consistent with the right of the public to construct and use such new highway. *Read* v. *Leeds,* 19 Conn., 188 ; *Woodruff* v. *Neal,* 28 id., 167 ; *Jackson* v. *Hathaway,* 15 Johns., 453 ; *Cortelyou* v. *Von Brundt,* 2 id., 357 ; *Higgins* v. *Reynolds,* 31 N. Y., 153.

2. The city acquired no title to the surplus earth by the action of the board of compensation. Their adjudication conferred no title to the soil upon the city. It does not purport to convey any. The action of the board of compensation, like that of any other body appointed by law for that purpose, in-

volved a consideration of the damages sustained by the respondent by imposing upon a portion of his land the burden of a public easement for the uses of a highway, and of the benefits accruing to him by the increased value the new highway would impart to the remaining portion. It did not attempt to vary the legal rights of the parties respectively in the herbage, or trees, or fences, or soil, or other obstructions, which it might be found necessary in constructing the new highway to remove beyond the limits thereof.

But assuming that the board of compensation did undertake to exercise jurisdiction over the question of the ownership of any portion of this surplus earth, their estimate, upon the face of their report, involved only a change of ownership of so much thereof as should be needed for the construction of the particular improvement which was the subject of their investigation. They did not assume jurisdiction to pass upon the question how much damage the respondent would sustain, or benefit the city would derive, from the use of this surplus earth for the repairing of Derby avenue.

If the board of compensation had assumed jurisdiction over this question, their action would have been *ultra vires*. They are restricted in assessing damages and benefits to those resulting from this public improvement and this alone.

3. It is admitted that when a street or highway is established in a populous city, the public may use it for all requisite municipal purposes, the laying down of sewers, water mains, gas pipes, &c., but it can hardly be claimed that this enlarged right to the use of the highway when constructed, confers upon the public in constructing it any right to appropriate the trees, or soil, or buildings on the land, to other and different public uses and improvements.

BUTLER, C. J. It is apparent in this case that the real question is whether the city of New Haven has a right, as against an adjoining proprietor, to take soil from one street in the network of streets in one particular part of the city, and use it in another street of that network near, but not directly connected with, the street from which the soil is taken,

for the purpose of making and grading such other street—such soil being reasonably necessary for that purpose. Whether, in other words, the city has a legal and exclusive right, as against the respondent, to carry the soil from in front of his land, (which must necessarily be removed by some one in grading the street,) and deposit it in a depression in Derby avenue, for the necessary purpose of raising that avenue up to a conforming grade.

Whenever the performance of a public duty is imposed upon any person or corporation, the powers necessary for its full performance are impliedly if not expressly and specifically given. The duty of laying out, making and maintaining public highways has been imposed upon the towns in which they are situate. In relation to the laying out of highways their powers and duties are expressly prescribed, but in relation to making and maintaining them their powers are not prescribed, but are implied, and are commensurate with the duty imposed. We must look then at the character of the duty and see what powers are necessary for its performance.

There has never been in our history a statutory provision prescribing the manner in which highways should be made. Nor has there been any provision in respect to the material of which to make them. By immemorial usage material has been taken for their construction within the limits of the highways of the town. Hills have been excavated and swamps and valleys filled up with the material taken from the excavation, and material existing in excess in one place has been taken to another where it was deficient. These things and many more have been done from the necessity of the case, and the nature of the duty, according to the discretion of the officers appointed to do them, and where they have acted reasonably, their power has never been successfully questioned. The inference derivable from the silence of the statute in relation to the manner in which material was to be obtained for the construction of the highways, from the immemorial usage in relation to it, and the necessity in which it originated, and from whatever judicial decision we have respecting it, is, very clearly, that it has always been contemplated and understood

by the General Assembly and the public that material for
the construction of highways was to be taken within their
limits, and might be removed from any place where unneces-
sary to any place where its use was necessary, without regard
to the rights of adjoining proprietors, if the necessity was a
reasonable one, and the power was exercised in a reasonable
manner. So too, in relation to the manner in which highways
should be maintained and repaired, and the places from which
material should be obtained for that purpose, the statutes have
been silent. In 1643 the towns were directed to appoint sur-
veyors of highway to "mend" them, and the surveyors were
authorized to "call out for that purpose every team and per-
son fit for labor." No provision was made as to the manner
in which material was to be obtained, or the extent to which
the ways should be mended. That statute was extended in
the code of 1650, and a preamble added as follows:

"Whereas the mainteineing of high wayes in a fitt posture
for passage, according to the severall occassions that occurre,
is not onely necessary for the comfort and safety of man and
beast, but tends to the proffitt and advantage of any people,
in the issue,—

"It is thought fitt and ordered" &c.

This quaint preamble does not *prescribe* the manner in
which highways are to be maintained, but it *recognizes* the
principles which should govern and have ever since governed
the legislation of the state and the officers of the towns in the
maintenance of them. These principles contemplated their
maintenance in a "fit posture for passage according to the
several occasions that should occur," not only "for the com-
fort of man and beast," but for "the profit and advantage of
the people," and therefore contemplated all such improvements
in structure and grade, as "occasions" occurring in conse-
quence of the advancement and growth of the country, and
particularly of populous and growing cities, should make nec-
essary. At a subsequent revision this preamble was dropped,
probably because thought unnecessary, and because preambles
were usually omitted when the laws were digested, and the
statute was silent on the subject until the revision of 1821,

when it was remodeled, and the present provision inserted requiring the towns to keep their highways "in good and sufficient repair." The same usage in relation to the taking of material from any part of the highways, and using it in any other place in the highways, without regard to any of the supposed rights of adjoining proprietors, originating in the same necessity has existed in respect to the maintenance of highways, as to their construction, and the same inference may be drawn from it.

Railroads are usually authorized to take additional land outside of their limits for the purpose of obtaining material for the construction of their roads, because it is deemed possible that more material may be required than can be readily obtained within their prescribed limits. No such provision has ever been made in favor of towns, and it is perfectly obvious that the legislature and the towns have considered the right and the power to take material where it could be found within the limits of the highways, and use it in any other place where it was necessary to use it, and where it was not to be found, as a right and power necessarily incident to the easement, and adequate to the wants of the public in respect to such material.

It seems clear to a majority of the court upon this review of the statutes and usages of the state in regard to the making of highways, that the power of the officers of the town to remove material from place to place upon its highways, for purposes of construction, improvement, or repair, and their right to do so, are commensurate with the duties imposed and the limits of the highways, and paramount to the rights of adjoining proprietors, and that presumptively that right was paid for when the land was subjected to the easement.

If the foregoing propositions are true in relation to the officers and highways of a town, they are *a fortiori* true of the corporation and streets of the city of New Haven; for that city is not only a highway district, with all the powers possessed by towns, but by a special provision of its charter it is authorized to grade its streets. The power to grade is not simply the power to level one street so that its parts shall conform with each other, but the power to grade numbers of

streets so that they shall conform to each other in a common grade. Such a construction of the charter is necessary to enable them to provide proper drainage and sewerage. No provision is made for the acquisition or disposition of material, and presumptively it was contemplated by the legislature when they granted the power to grade, and by the board who assessed damages or benefits to the respondent when the street was laid out, that material excavated therein could and probably would be removed on some other street which required to be elevated to grade.

We think therefore that the power and right of the city to remove the soil in question to Martin street or Derby avenue, where it is reasonably required, are undoubted; that the right is paramount to the rights of the respondent; that presumptively he has been paid for the soil which has been or is to be taken, and has no just cause of complaint; and that in attempting to remove that soil on to his own premises, and deprive the city of it, after being apprized of their immediate intentions and necessities, and to the injury of the city, he was a wrong-doer and should be restrained by injunction; and so we advise the Court of Common Pleas.

In this opinion the other judges concurred.