id. 329; Collyer v. Collyer, 6 N. Y. St. Repr. 693; Matter of McKay, 5 Misc. Rep. 123; Shepard v. Patterson, 3 Dem. 183; United States Trust Co. v. Bixby, 2 id. 494; Du Bois v. Brown, 1 id. 317.

Valuable assistance having been rendered the court by counsel, costs will be awarded to both sides.

Decreed accordingly.

---

JOHN E. JACQUEMIN, Appellant, *v.* JOHN C. FINNEGAN, Respondent.

(County Court, Oneida County, January, 1903.)

**Deed — Boundary — Title to " superincumbent materials " in a street.**

> An owner of a lot bounded on the south by the north " side " of a street does not own the fee of that street to its center.

> Where a city paves and curbs the street and assesses the expense *pro rata* on the owner of the lot and thereafter repaves the street by a contractor and digs up the old curbing, it, if useful to the repaving, would not belong to the owner of the lot as " superincumbent materials " placed upon it even if he owned to the center of the street, as the city has a paramount right to use such materials to repave the street, and, besides, the owner of the lot neither owned the curbing nor put it in the street.

APPEAL from a judgment rendered in justice's court of the city of Utica, in an action in which the plaintiff claims the defendant has appropriated and converted certain curbing stone, which the plaintiff alleges is his property.

The facts sufficiently appear in the opinion.

P. H. Fitzgerald, for appellant.

G. C. Morehouse, for respondent.

SMITH, J. E., J.   On February 16, 1881, the plaintiff, by a conveyance to him, became the owner of a lot on the north side of Bleecker street, in the city of Utica, in his deed bounded as fol-

lows: " Commencing at a point on the northerly side of Bleecker street, ten feet west of the east line of lot No. 22, in block 19, as the same is designated on a map made by Charles C. Broadhead, surveyor, in the year 1810, for the representative of Rutger Bleecker, deceased, which map is on file in the clerk's office of said county, and running thence at right angles with Bleecker Street northerly 120 feet to the southerly line of said lot 22; thence at right angles with said last mentioned line 40 feet to the north-westerly corner of a lot of land sold by Horatio Seymour to Cornelius Desmond; thence southerly along said Desmond's westerly line to the northerly side of Bleecker Street; thence westerly along the northerly side of Bleecker Street to the place of beginning. Said lot being forty feet front and rear and 120 feet deep."

This lot is numbered " 667 Bleecker Street." The plaintiff was in possession of these premises on July 9, 1902, and from the evidence it appears that he had been in such possession since the date of the deed to him.

In 1882 Fowler & Baxter paved the street, under a contract with the city of Utica. The plaintiff had no contract with any one for that paving, and he paid no contractor for such paving, but he paid an assessment made by the city therefor in proportion to his frontage on the street. The plaintiff claims he paid for such paving, but testified that he means he paid an assessment for the pavement, gutters and curbing made in 1882.

The street is now being repaved under a contract made by the city with " The Barber Asphalt Company."

On the argument the parties stipulated that the determination to pave the street in question in front of the plaintiff's premises was duly published in two official newspapers, as required by the city charter. Also that the common council duly advertised for bids to pave the street in front of the plaintiff's premises, in two official papers, as required by the charter. The parties also stipulated to waive the question of title to real estate being in dispute.

The proceedings under which the contract to repave the street was let, and the paving is being done, seem to be in accordance with the city charter. The specifications under which the work is being done require the contractors to remove the curbing stone in question in order to lay the proper foundation, and properly do the paving they have contracted to do.

County Court, Oneida County, January, 1903.        [Vol. 39.

The defendant was in the employ of the contractors, and, under the order of the city engineer, the contractors had caused the curbing in question in front of the plaintiff's premises to be taken up; it was piled up in the street, preparatory to doing the paving under their contract. The plaintiff caused the curbing stone thus taken up and piled in the street to be conveyed on to his lot. The defendant, on July 9, 1902, caused them to be removed from the plaintiff's lot, contrary to the objections of the plaintiff's wife, acting as his agent. This action was then brought. The stone in question had been used as curbing in the street ever since the street was paved in 1882.

Various errors were committed by the justice in receiving and excluding evidence, but from the conclusion I have reached I do not deem it necessary to consider such errors.

I have reached the conclusion that this action cannot be maintained, for two reasons.

*First.* The plaintiff was never the owner of the stone in question; he did not put them in the street. The city of Utica did. What the plaintiff paid was by way of tax presumably levied in pursuance to law, to pay, with others for the improvements to the street. Such improvements were made for the use and benefit of the public, including the plaintiff, and, under the law, the plaintiff, as an adjacent property-owner, was obliged to bear such part of the burden as the law imposed, but that did not give him the title to any part of the improvement made.

If a town should find it necessary, as often is the case, to build a bridge or culvert in the highway or street, and such bridge or culvert is built pursuant to law, the taxpayers paying therefor, would the taxpayers thereby become the owner of the bridge or culvert? Clearly not.

The street in question is under the control of the city of Utica, whose duty it is, at all times, to keep the street in a safe condition. To do this the city is clothed with the authority to cause needful repairs to be made and the law fixes the liability on the property-owners to pay for such repairs.

Section 99 of the city charter confers upon the common council the power to cause any street, highway, lane or alley in said city, to be graded, leveled, paved or repaved, which is to be done by contract made therefor. It is held that the power to pave includes curbs, sidewalks, gutters, trimmings and grading therefor. Elliott

Roads and Street, § 461; Wilson v. City of Watertown, 3 Hun, 508; 2 Dillon Mun. Corp., § 780, n. 1. And the city may do all of these acts in one contract. L. S. R. R. v. City, 5 Munic. Corp. Cases, 229.

The plaintiff claims title to the curbing not only because he was taxed to put it down, but also because it was located on land which he says he owned in fee. In other words, because it is "superincumbent material," located on his land, the same as soil, gravel, stone, etc., found or located on his land, is part of the land.

But it is held that the municipality has the right to reasonably use or appropriate soil, or superincumbent materials while making repairs on or improving the highway. Bundy v. Catto, 61 Ill. App. 209; Overman v. May, 35 Iowa, 89; Cook v. Hecht, 64 Mo. App. 273; Fetch v. Gilman, 22 Vt. 38; Baxter v. Winwooski Turnpike Co., 22 id. 114.

According to some of the cases, soil may be taken from one part of the highway and used upon another part. Bissell v. Collins, 28 Mich. 277. Or even upon a different highway, which is within the jurisdiction of the same municipal authorities, both highways being regarded as parts of one plan of public improvement. City of New Haven v. Sargent, 38 Conn. 50; Town of Palatine v. Kreuger, 121 Ill. 72; Hovey v. Mayo, 43 Maine, 322; Adams v. Emerson, 6 Pick. 58; Denniston v. Clark, 125 Mass. 216; Griswold v. Bay City, 35 Mich. 452; Huston v. City of Fort Atkinson, 56 Wisc. 350.

It has been decided that the right of the public to the soil for the purpose of repairs or improvements is paramount to the claim of the owner of the fee, and accordingly he has been restrained by injunction from taking possession of earth which has been removed in repairing the highway. City of New Haven v. Sargent, 38 Conn. 50.

And so it has been held that he may be restrained by ordinance from removing surplus soil needed elsewhere for the streets. Town of Palatine v. Kreuger, 121 Ill. 72.

In Robert v. Sadler, 104 N. Y. 229, a full review of the cases in this State on the subject is made, and the result of the court's consideration of the question is fairly stated in the headnote, as follows: "Where the public have taken an easement for a street or highway, and the surface of the land is above the grade of the highway, so that, in order to reach the grade line, it is necessary

to remove the superincumbent material, this may be used on other portions of the road, on the premises of other land owners; but the public easement justifies only the taking of earth and soil which the process of construction or repair requires, and necessarily compels to be removed."

In Cotanch v. Grover, 57 Hun, 279, Hardin, P. J., says: "If the removal of the earth in front of the plaintiff's premises was made for the purpose of improving the street or highway by the village authorities, and for no other purpose, and they acted in good faith in such removal with a view to benefit the public, their action was within their corporate powers."

In view of these and other authorities, I think it well settled that, even had the plaintiff been the owner of the land to the center of the street, his title and interest would be subordinate to the rights of the city. The city would then have the right as against the plaintiff, to utilize in good faith, any of the "superincumbent material" needful for repairing the street.

New curbing is now being put in along the street, and it cannot be said that the old material may not be needed in the improvements now being made. Indeed, the defendant attempted to show that the stone in question was to be used in repaving the street, but was not permitted by the court below to do so. The defendant ought to have been permitted to show by proper proof that the stone in question was needed in making the present improvements and was to be used therefor. The defendant had charge of the work, and knew for what purpose the stone was to be used.

To hold that the plaintiff could recover is equivalent to holding that the plaintiff had the right, as against the city, to appropriate the stone in question; that his title was paramount to the rights of the city, and if he had been permitted to hold the stone, if permitted to remove it, then the city would be deprived of its use, notwithstanding it might be needful in making the improvements.

The curbing was lawfully taken up, by order of the city engineer, and piled in the street. It was in the possession of the city, when the plaintiff took it into his possession. The defendant caused it to be taken back to the street, and if he is guilty of conversion, it is as against the city, and not as against the plaintiff.

*Second.* The plaintiff is not the owner of the land where the curbing in question laid; his lands are bounded on the south by

the northerly side of the street; by the deed, the lot conveyed to him is 40 feet front and rear and 120 feet deep.

The witness Rich measured the lot, and found that measuring from the north line of the street the lot was 120 feet deep, and it was 40 feet wide along the side of the street. This undisputed evidence shows the plaintiff has all the land called for by his deed located north of the street, as in the deed described.

From the north line of the street to the center thereof is thirty-three feet, and I can see no way by which the deed can be construed to include the street or any part of it.

In Kings County Fire Ins. Co. v. Stevens, 87 N. Y. 287, the lands were described in the deed as " Beginning at a point on the southerly side of the Wallabout bridge road, and running thence southerly; and after various courses and distances north 48 degrees 9 minutes west, * * * to the Wallabout bridge road, and from thence along said road * * * to the place of beginning." It was held that the grant did not include the highway to the center; but that the land was bounded by the southerly side of the highway.

It was settled in this State, Child v. Starr, 4 Hill, 369, that a boundary in a deed " along the shore " of a fresh-water river carried the grantee only to low-water mark, and that the bed of the river did not pass under the conveyance.

So a boundary by the bank of a creek has been held to confine the grantee to the margin of the stream. Halsey v. McCormick, 13 N. Y. 296.

I think the roadbed was excluded by the terms of the description within the cases of Jackson v. Hathaway, 15 Johns. 447; English v. Brennan, 60 N. Y. 609; White's Bank of Buffalo v. Nichols, 64 id. 65; Blackman v. Riley, 138 id. 318–324; Holloway v. Southmayd, 139 id. 390–412; Deering v. Reilly, 167 id. 184–193.

The plaintiff not having acquired the title to, or being the owner of, the stone in question, and not being the owner of the land where it lay, he cannot recover in this action.

The judgment is, therefore, affirmed, with costs to the defendant.

Judgment affirmed, with costs to defendant.