ORLANDO DRAPER & others *vs.* MAYOR OF FALL RIVER & others.

Bristol.    October 26, 1903. — February 26, 1904.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Municipal Corporations.   Fall River.*

Under the revised charter of the city of Fall River, St. 1902, c. 393, the mayor of that city has no authority to order the construction of a sewer without a previous adjudication by the board of aldermen.   The fact, that an appropriation has been made in general terms for sewer construction and that the superintendent of streets has been authorized to expend it under the general control and supervision of the mayor, does not give the mayor authority to construct a sewer without an adjudication by the board of aldermen that it is necessary for the public health or convenience.

Under the revised charter of the city of Fall River, St. 1902, c. 393, the board of aldermen, as successors of the mayor and aldermen, have charge of the construction of sidewalks including the laying of curbstones, but if in a particular case the aldermen neglect to order curbing to be laid where it is necessary to render a street safe and convenient for travel, the mayor may direct the superintendent of streets to lay the curbing, or the surveyor of highways may lay it of his own motion.

Changing the surface of Durfee Street in Fall River from macadam to granite block paving, and the surface of Granite Street in the same city from cobblestones to a brick pavement, were held to be specific repairs which must be authorized by the board of aldermen under the revised charter of that city, St. 1902, c. 393, as distinguished from ordinary repairs of an administrative nature which might be ordered by the mayor to be made by the superintendent of streets.

A petition of not less than ten taxable inhabitants, under R. L. c. 25, § 100, is the proper remedy to restrain the mayor of a city from expending money or incurring obligations in behalf of the city for the construction of certain sewers and sidewalks and the paving of certain highways, ordered by the mayor in excess of his authority.

MORTON, J.  This is a petition by more than ten taxable inhabitants of the city of Fall River, including a majority of the board of aldermen, against the mayor, the superintendent of streets and the city treasurer to restrain the mayor from ordering the construction of certain sewers, sidewalks, curbing, paving and highway repairs except as authorized by the board of aldermen, and the superintendent of streets from proceeding with the work as ordered by the mayor, and the city treasurer from making any payments on account of the matters complained of.  The mayor demurred and answered generally.  The other two defendants answered generally without demurring.  The case was sent to a master to hear the parties and report the facts and so much of the evidence as might be required to raise any question of law as either party requested.  Upon the coming in of the master's report the defendants filed exceptions thereto which were overruled so far as they related to questions of fact. The demurrer was also overruled, and the case was reserved for the full court upon the bill, answers, master's report, and the evidence annexed thereto and the defendants' exceptions so far as they raised questions of law; — such disposition to be made of the case as the full court should deem meet.

The questions raised relate to the respective powers of the mayor and the board of aldermen under the revised charter of the city of Fall River, St. 1902, c. 393, in regard to the repair and paving of streets and highways, the construction and curbing of sidewalks and the building of sewers.

The scheme of the charter is that the administration of all the fiscal, prudential and municipal affairs of the city, except as otherwise provided, shall be vested in an executive department consisting of the mayor and a legislative department consisting of the board of aldermen.  Neither shall exercise any powers belonging to the other.  The executive powers of the city are vested solely in the mayor and are to be exercised by him through various departments and officers who are subject to his supervision and control.  Amongst these departments is the street department, under the charge of the surveyor of highways who is also the superintendent of streets.  No contract in excess of $200 can be made by any of these departments or officers unless it is in writing and accompanied by a bond and both the contract

and bond are approved in writing by the mayor.   The legislative powers are vested in the board of aldermen who it is also provided shall have " First.   The powers of towns, the powers of boards of aldermen, and of the mayor and aldermen and city councils of cities under general law.   Second.   The powers now held by the city of Fall River, or by the city council, the aldermen, or the mayor and aldermen of Fall River by special laws. Third.   The exclusive power to lay out, locate anew, alter, widen and discontinue town ways, streets and highways, and to order specific repairs or a change of grade therein, in the manner provided by law."   St. 1902, c. 393, § 15.   Damages are to be assessed by the board and any person aggrieved shall have the remedy provided by law in such cases.   No member or committee is to take any part in the expenditure of public money, the employment of public labor, or the purchase of public supplies or materials or the making of public contracts, or in the construction, alteration or repair of any public property or the care, custody or management of the same or generally in the conduct of the administrative or executive business of the city.   There is also a general provision that no expenditure shall be made or liability incurred by any officer or board on account of the city beyond the amount appropriated therefor in the annual appropriation order, or in a subsequent appropriation.

Pursuant to the power vested in them, the board of aldermen passed an annual appropriation order in February, 1903, appropriating certain sums for highways, paving, curbing, and sewer construction and also adopted the following vote : "Ordered, that the several boards and officers under the general supervision and control of the mayor be and they are hereby authorized to expend the appropriation as hereinafter designated.   Superintendent of streets.   Appropriation for highways.   Appropriation for highways, curbing.   Appropriation for paving.   Appropriation for sewers, construction.   Appropriation for street lights."   No question arises over the street lights, nor as we understand it does any question arise over the unexpended balance of appropriations made by the previous government for the construction of sewers ordered by them and not completed.   The mayor proceeded without any further action on the part of the board of aldermen to order the superintendent of streets to construct cer-

tain sewers and to lay certain curbing and to do certain paving and admits his purpose to order other sewers to be built and more curbing and paving to be laid, claiming the right to do so as the executive officer of the city. Some of the work thus ordered has been done and paid for and contracts have been made for materials and supplies and the superintendent of streets in his answer admits that he feels bound to obey the orders and directions of the mayor. The city treasurer, as the master finds, intends to pay for the work ordered by the mayor, so far as the bills come to him properly audited, unless restrained by the order of the court. The mayor contends that after the appropriations were made and the vote referred to above had been passed all that remained to be done was of an administrative or executive nature, and that it came within the scope of his authority under the charter to direct the superintendent of streets what sewers to build and what curbing and paving to lay and what highway repairs to make. In regard to the matter of sewers he makes the further contention that Mr. Phinehas Ball of Worcester was employed by the city authorities many years ago to devise a system of sewerage for the city, and made a report which was accepted by the city, and in accordance with which sewers have since been built, and that an appropriation for the construction of sewers is for sewers to be built in accordance with this plan, and that for this reason also the work of constructing sewers is purely administrative or executive. But this contention is disposed of, we think, by the finding of the master, which was warranted by the evidence, that the plan had not been so adopted by the city that " the building of sewers from time to time in accordance with the plan has become a purely executive or ministerial function, to be performed by the executive officers of the city of Fall River after a general appropriation has been made for sewer construction without the previous action of the proper body having the determination under the law of what sewers public convenience and safety require, and where and how they shall be built."

The petitioners contend that it is for the board of aldermen to decide what sewers shall be built and where, and how they shall be constructed and what curbing and paving shall be laid, and what sidewalks and repairs, so far as they are specific or involve changes in established grades, shall be made.

They do not contend as we understand them that the surveyor of highways and the superintendent of streets would not have authority either under the supervision and control of the mayor or of their own motion to make such ordinary repairs, including in some cases the laying of curbing and paving, as might be necessary to render the streets reasonably safe and convenient for travel, and keep them in a proper condition of repair. If such is their contention, then we are of opinion that it cannot be sustained. The ordinary repairs which are required to keep streets and highways in a safe condition for travel are plainly matters of an administrative nature. By the express language of the charter, authority in regard to specific repairs and changes of grade is vested exclusively in the board of aldermen, (St. 1902, c. 393, § 15, cl. 3,) but ordinary repairs are left in the hands of those charged with the duty of keeping the streets in a suitable condition for travel.

As already observed, the charter provides that the powers of towns and of boards of aldermen, and of the mayor and aldermen and of city councils under general laws shall be vested in the board of aldermen. Authority to construct sewers and to take land if necessary is derived from general laws. The Revised Laws, which were in force when the present charter was adopted, provide that " The mayor and aldermen of a city and the sewer commissioners, selectmen or road commissioners of a town may lay, make, repair and maintain all such main drains or common sewers as they adjudge necessary for the public convenience or the public health," etc. R. L. c. 49, § 1. Under former charters granted to the city this power was expressly conferred upon the mayor and aldermen. St. 1854, c. 257, § 15. St. 1885, c. 270, § 20. The authority thus conferred by general laws is given, so far as cities are concerned, to the mayor and aldermen, and as we have seen the revised charter expressly gives to the board of aldermen the powers given to the mayor and aldermen under general laws. It follows that the power to say what sewers shall be built, and how they shall be constructed is vested in the board of aldermen and not in the mayor. The fact that an appropriation has been made in general terms for sewer construction and that the superintendent of streets has been authorized to expend it under the general supervision and control of the mayor does not convert

the laying and building of sewers from an administrative into an executive matter. Before or as a part of the order requiring a sewer to be laid and constructed the board of aldermen is required in some form, expressly or impliedly, to adjudge that it is necessary for the public health or convenience. They cannot, if they would, depute this power to the mayor and the superintendent of streets. ' *Collins* v. *Mayor & Aldermen of Holyoke*, 146 Mass. 298, 307. It is given to them and to no one else, and is a legislative or judicial rather than an administrative or executive power. The fact that the charter forbids members of the board of aldermen to take part in any public contract, or in the conduct of any executive or administrative business, has no more tendency to show that it is not for them to decide in regard to the laying and making of sewers, than it has to show that it is not for them to locate and lay out streets. The two things are entirely separate and distinct. Neither does it help the matter that the sewers which the mayor has ordered to be built are in fact (if it is a fact) necessary for and will tend to promote the public health or convenience. That, as already observed, is a matter for the board of aldermen and not for him, to pass upon. The bill alleges and the answer admits that the mayor has ordered the superintendent of streets to build certain sewers which are specifically described without any adjudication by the board of aldermen that they are necessary for the public health or convenience. It follows from what has been said that the orders thus given were unauthorized and invalid and that action under them should be restrained if the remedy chosen is the proper one, which will be considered later.

We come next to the questions relating to curbing and paving. It is provided by R. L. c. 49, § 43, that " if the city council of a city . . . accepts the provisions of this section or has accepted the corresponding provisions of earlier laws, the mayor and aldermen . . . may, if in their judgment the public convenience so requires, grade and construct sidewalks and complete partially constructed sidewalks in any street, with or without edgestones, may cover the same with brick," etc. This in the case of cities puts the construction of sidewalks into the hands of the mayor and aldermen. *Attorney General* v. *Boston*, 142 Mass. 200. And we do not see how the question of curbing can be separated from

that of construction. The laying of curbing is included in and is part of the construction of sidewalks. The statute expressly recognizes it by giving to the mayor and aldermen the power to construct sidewalks and to complete partially constructed sidewalks with or without edgestones. The answer denies that § 43 has been accepted by the city council, but admits that the corresponding provisions of the earlier laws were accepted. The result is, therefore, that under the section of the revised charter referred to in connection with sewers, St. 1902, c. 393, § 15, cl. 1, the matter of curbing is in the hands of the board of aldermen and not in those of the mayor. If, however, the board of aldermen omit or neglect in any particular instance to order curbing to be laid, and it is necessary that, in order to render the street safe and convenient for travel curbing should be laid, then the mayor acting under the authority given to him as the executive officer of the city and the obligation imposed on all cities and towns to keep their streets and highways in a reasonably safe and convenient condition for travel may direct the superintendent of streets to lay it or the surveyor of highways may lay it of his own motion, on the same ground on which, if the authorities having the right to order specific repairs neglect to do so in a case requiring a change of grade, those charged with the duty of repair may do what is necessary to make the way reasonably safe and convenient. *Sullivan* v. *Fall River*, 144 Mass. 579. The master has found that, in Warren Street, which is one of the two instances in which it is specifically charged that the mayor has ordered curbing to be laid by the superintendent of streets, curbing was necessary to render the sidewalk, which was there, safe, and to keep it in proper repair. In regard to the other, Beach Street, he finds that it was reasonably proper but was not necessary to make the street safe. We think that it was within the scope of the mayor's authority, under the general obligation imposed on cities and towns to keep their streets and highways reasonably safe and convenient for travel, to order the curbing to be laid down in the first case, but not in the second. It is immaterial whether in obeying the order in the second case the defendant Thurston acts, or proposes to act, as surveyor of highways or superintendent of streets or in both capacities. The order of the mayor can derive no validity from

the fact that Thurston proposes to carry it out in one capacity rather than another.

We think that the repairs which have been ordered in Durfee and Granite Streets must be regarded as specific rather than ordinary repairs. What will constitute ordinary repair and what specific must to some extent be a matter of degree. No clear rule can be laid down for all cases. No change of grade is contemplated by the orders that have been given in regard to these two streets. But in each case the entire surface of that portion of the street used for vehicles for the specified distance will be removed to a greater or less depth and another surface of different material, and at, no doubt, considerable cost, substituted. Durfee Street is a macadamized street and a granite block paving is to be put down. Granite Street is paved with cobblestones and a brick pavement is to be substituted. A material alteration is thus to be made in the construction of each street. All changes in the surfaces of streets, or of the materials of which they are composed, do not necessarily come under the head of specific repairs. Much latitude in the choice of materials and manner of construction must necessarily be allowed to those charged with the duty of repair. But we think that substantial and important changes, like those in these instances, which are not merely incidental to a reconstruction rendered necessary by the increased use of the street or other causes, but constitute a radical difference of treatment, must be regarded as specific rather than general repairs. *Bigelow* v. *Worcester*, 169 Mass. 390. Otherwise it would be within the power of the surveyor of highways or of the mayor and the superintendent of streets to make over the streets as they saw fit without any limit, except that of the appropriation. We cannot think that the Legislature intended that the board of aldermen should have no voice in such matters beyond the making of the appropriations.

If the effect of the construction thus given to the charter shall be, as the respondents contend it will be, to take away from the mayor powers which the Legislature intended that he should have, it will be for the Legislature to apply the remedy, and not for us to do so by a forced and unnatural construction of the language used. It is to be presumed that the board of aldermen will be governed by a regard for the public interests, and will

order the making of such changes and improvements from time to time as may be required, and as they deem warranted by the state of the city's finances.    Provisions almost identical with those contained in the charter before us in reference to the powers of the mayor and the board of aldermen are to be found in several charters recently granted to other cities, though in one or two the legislative body is called a council or city council instead of a board of aldermen.    St. 1903, c. 345, Medford. St. 1900, c. 323, Gloucester.    St. 1900, c. 427, Northampton. St. 1899, c. 162, Melrose.    St. 1899, c. 240, Somerville.    We do not discover in these and other charters any intention on the part of the Legislature to increase the executive powers at the expense of the legislative, but a purpose to separate the two, and to place upon the mayor the responsibility for the proper discharge of duties pertaining to executive matters, and to confine members of the legislative body to the performance of duties connected with that branch of the government.

The respondents contend lastly that the remedy is by petition for a writ of certiorari, and not by a petition under R. L. c. 25, § 100, which this is.    But the case presented is one in which an officer of the city, the mayor, is about to expend money or incur obligations purporting to bind the city in a manner in which the city has no legal right to expend money or incur obligations, and therefore comes within the express language of the statute.

*Injunction to issue; decree to be settled by a single justice.*

*H. A. Dubuque*, for the defendants.

*A. S. Phillips*, for the plaintiffs.