HANS E. NELSON v. CITY OF WILLMAR.[1]

December 3, 1937.

No. 31,331.

George L. Barnard and H. Leigh Ronning, for appellant.
R. W. Stanford and T. O. Gilbert, for respondent.

HOLT, JUSTICE.

Plaintiff appeals from the order sustaining a demurrer to the complaint.

It is alleged that the city, on April 22, 1936, duly advertised for sealed bids for constructing cement sidewalks, driveways, curbing, and street crossings for the season of 1936, the bids to state the price per yard for the different kinds; that plaintiff's bid therefor was accepted and a contract entered into between plaintiff and de-

[1]Reported in 276 N. W. 234.

fendant under which, for specified prices per square yard for sidewalks, driveway crossings and street crossings, relaying block or tile sidewalks, and 50 cents per lineal foot for curbing, plaintiff undertook to complete all such work as theretofore had been ordered constructed by the city council and all that might thereafter be ordered within the city during the year 1936; that such work shall cover all work described ordered to be done by the council and not done by the abutting property owner; that plaintiff has done part of the work under the contract and is ready, able, and willing fully to perform all thereof, but that on or about June 25, 1936, defendant, through the city council, duly ordered 16,500 lineal feet of cement curbing to be constructed in the city by a person other than plaintiff, thereby damaging plaintiff in the sum of $2,475, for which judgment is asked.

It is not contended that the contract is invalid insofar as it relates to sidewalk construction or repair; but that it is unauthorized and void as to curbing. Plaintiff insists that curbing is incident to sidewalk construction and may be regarded as connected therewith, so that in contracting lawfully for sidewalk construction and repair, curbing may be included. Section 200 of the city charter reads:

"The council shall by resolution adopt and cause to be filed for inspection in the office of the clerk general plans and specifications to apply to and govern the building, relaying and repairing of all sidewalks in the city. From time to time in each year the council shall cause invitations for bids to be published in the official paper, in the same manner and for the same length of time as is required in the case of other public improvements, for building, laying and repairing all sidewalks that may be ordered by the council during the calendar year. The bids therefor shall be received and opened, contract let and bond given in the same manner provided in this chapter for other public improvements."

There is in the charter no similar provision for letting contracts for other public improvements to be determined upon and ordered in the future during the calendar year. It is common knowledge

that sidewalks are often laid and repaired by the abutting owner after the council has ordered them built or repaired. So it is not feasible to let patches of sidewalk construction each time an abutting owner neglects to comply with the order of the city council. Such patchwork can be let more advantageously to a contractor who does all thereof during a certain period. When it comes to other public improvements not usually done by abutting or benefited owners, they are of such magnitude that they may well be let as separate specific jobs. It is true that in § 177 of the charter the city council is empowered to lay curbing, but only after notice to and hearing of property owners liable to be assessed therefor. So there is a distinction between letting a contract for sidewalks and curbing. The charter regards sidewalk construction and repairs as separate and disconnected from curb construction.

We also think that curbing cannot from a practical standpoint be considered as incidental to sidewalk construction so that § 200 should be construed as authorizing the city council to include curbing as a part of a sidewalk construction contract. It is only where streets are paved that curbing seems essential as a border to the pavement and a part of the gutter to convey surface water to sewers. To be sure, in the business parts of a city, where there are no boulevards, the sidewalk joins the curb; but the mileage in a city where the sidewalks join with the curb is comparatively small as compared with the mileage of sidewalks where there is a boulevard between the curb and the walk.

Curbing may be ordered under the charter only after notice to the property owners liable to be assessed for benefits and a hearing had pursuant thereto as provided in § 177, whereas under § 200 a sidewalk construction and repair contract may be entered into without such notice and hearing. Plaintiff cites cases holding or tending to hold that curbing may be included with sidewalks in proceedings to assess benefited property. The cases of Eickhoff v. Argenta, 120 Ark. 212, 179 S. W. 367; Burk v. Altschul, 66 Cal. 533, 6 P. 393; City of Chicago v. Lord, 277 Ill. 397, 115 N. E. 543, are not in point. And the same may be said of State ex rel. Cunningham v. District Court, 29 Minn. 62, 11 N. W. 133. Draper v.

Mayor of Fall River, 185 Mass. 142, 69 N. E. 1068; Jacquemin v. Finnegan, 39 Misc. 628, 80 N. Y. S. 207; Hoefer v. City of Milwaukee, 155 Wis. 83, 143 N. W. 1038, come a little nearer, but are not helpful, for in none of these cases is there such difference indicated between the construction and repair of sidewalks and the construction of other public improvements as there is in §§ 177 and 200 of the defendant's charter.

The complaint fails to show a valid contract to construct 16,500 lineal feet of curbing, and hence no damages are recoverable for a breach of such contract.

Order affirmed.