300 P.2d 934

Mac J. FELDHAKE and Andrew H. Feldhake, Plaintiffs-Appellants,

v.

The CITY OF SANTA FE, Defendant-Appellee.

No. 6038.

Supreme Court of New Mexico.

Aug. 22, 1956.

Gilbert, White & Gilbert, Sumner S. Koch, Santa Fe, for appellants.

Samuel Z. Montoya, Santa Fe, for appellee.

KIKER, Justice.

The suit of plaintiffs sought to set aside a determination of the City of Santa Fe to pave certain streets in Paving District 8, plaintiffs being abutting landowners liable to assessment therefor. Plaintiffs

prayed, in the alternative, that if the City should proceed, or threaten to proceed, with the paving in District 8, the court enjoin the City from so doing.

Plaintiffs' complaint was based upon alleged irregularities in the proceedings of the City and its engineers which led up to the order for paving the District.

The City followed what is known as the "provisional order" method in arranging for street improvements in District 8. This method, by statute, requires that the City, in the beginning, when of the opinion that the interest of the municipality requires that any streets, alleys, or parts thereof "be graded, graveled, paved, * * * or in any manner improved, * * *" shall, by resolution, direct the city engineer to prepare preliminary plans showing a typical section of the contemplated improvement, the type or types of material, approximate thickness and wideness, and preliminary estimate of the cost of such improvement. The resolution may also be directed to "some other competent engineer". Cf. § 14–37–16, N.M.S.A.1953.

The statute requires that the engineer shall submit an assessment plat showing the area to be assessed and the amount of maximum benefits estimated to be assessed against each tract or parcel of land in the assessment area, said estimate to be based upon a front foot zone, area, or other equitable basis which shall be set forth in the resolution.

The resolution of the governing body may provide for one or more types of construction. As to Paving District 8, there were three separate resolutions. The first of these resolutions was adopted August 12, 1953, and set forth the following as to type of construction:

"Compacted subgrade, prime coat of asphaltic material, bituminous hot plant mix base course, and bituminous hot plant mix surface course."

The second of these resolutions was adopted September 30, 1953, and set forth the same language as to type of construction as quoted above. The third resolution was adopted by the City on July 14, 1954, and set forth the following as to types of construction:

"1. Compacted subgrade, prime coat of asphaltic material, bituminous hot plant mix base course, and bituminous hot plant mix surface course.

"2. Compacted subgrade, stabilized base course, prime coat of asphaltic material and bituminous hot plant mix surface course."

The statute requires that the engineer estimate benefits and costs of construction for each of the separate types provided in the resolution; and the engineer may make such estimate in the lump sum or by unit prices.

It is also required that the total estimate must include the advertising, appraisal, en-

gineering, printing, and such other expenses as in the judgment of the engineer would be necessary or essential to complete the work and pay therefor. After the engineer's plans, plat, typical section and preliminary estimate of the cost and estimate of maximum benefits have been filed with the clerk of the municipality, the governing body shall examine the same and, if found satisfactory, shall make a provisional order that the improvement work be done.

The provisional order must contain a time and place at which the owners of the property to be assessed and other interested persons may appear and be heard by the board as to the propriety and advisability of making such improvement, as to the cost thereof, and as to the manner of payment therefor and the amount to be assessed against each of the properties to be improved.

It is required that ten days notice in writing of the time and place of hearing be given to property owners and that service thereof may be made by mailing a copy of the notice to each of such property owners at his last known address. The names and addresses are to be taken from the records of the county assessor.

It is also required that this notice shall be published "once each week for three (3) consecutive publications, the last publication to be at least one (1) week prior to the date of the protest hearing." § 14–37–17, N.M.S.A.1953.

The complaint charges failure of the City in the doing or having done various things required by the statutes as above stated.

The defendant City joined issue by denying all irregularities and failures charged by plaintiff.

The trial court made findings of fact in which it held that the City had proceeded regularly in the establishment of Paving District 8, and stated conclusions of law based upon the findings of fact made. Judgment was entered in favor of the city and plaintiffs appeal therefrom.

Among the conclusions of law is that numbered 4 which reads:

"That the Court cannot review or disturb a determination of matters left to the discretion of the City Council of the defendant in the absence of a showing of fraud, a flagrant abuse of its discretion, or an arbitrary conduct on the part of the said City Council."

Plaintiffs took exception to this conclusion of law and base their first point upon the claim that the court erred in making it.

Appellants state their point as follows:

"Under the 'provisional order' law, in a civil action in District Court to 'correct or set aside' the determination of a city council, the actions of the council are entitled only to *prima facie* presumption of being correct."

Under this point appellants trace the history of the statutes which have been enacted with reference to the provisional order method of providing for street improvements showing the various changes which have been made between 1903 and the amendment appearing as Chapter 115 of the Session Laws of 1953.

In the argument it is stated to be highly significant that the 1953 law requires the governing body shall make the preliminary resolution provide for one or more types of construction, and the engineer shall prepare and file the following: (a) preliminary plans of the contemplated improvements; (b) preliminary estimate of the costs, with separate estimates for each type of construction provided for in the preliminary resolution; and (c) statement of maximum benefits estimated against each tract of land.

Appellants direct attention to other statutory provisions, that the city council shall hold a hearing at which protest may be made by any property owner affected by proposed paving or other improvement; that in no event shall the assessment exceed the estimated benefits to the property assessed; that after protest is made and the City orders the paving done a protestant who is dissatisfied and desires a test in court must file his suit within thirty days after the determination by the council.

It is asserted by appellants that if the procedure suggested is closely followed there will be no unjust assessment liens upon property.

In this state there are two methods of bringing about street improvements. One of these is known as the petition method, under which not less than 51% of the property owners in a given territory may petition the City to take action for improvements. The other is the provisional order method, under which action is initiated by the City, and with which we are dealing in this case.

Appellants insist that, under court attack, the City's determination is prima facie evidence only of compliance with the statutory requirements.

Appellants say the case of Francis v. Roberts, 58 N.M. 754, 276 P.2d 739, 742, "contains a dictum which is opposed to our contention under this point." They point out that the opinion compares the provisional order method with the petition method, and that the petition method was involved in Francis v. Roberts, supra. Appellants are somewhat critical of the opinion, saying the dictum was largely based on the statute making recitals in paving certificates conclusive evidence, whereas statutes relating to the petition method merely make such recitals prima facie evidence of the facts recited. The statements in Mr. Justice Seymour's opinion which have been criticized by appellants are:

"Without stating it as decided case law in New Mexico, since the issues are not here presented, it is safe to say generally that the Bateman case, the Ellis case and the Scheurich case stand for the following propositions under the provisional order method of paving: (a) that confiscation is a proper attack on or defense to a paving program; (b) that the judgment of the city council is conclusive in the absence of the showing of a flagrant abuse of discretion."

The opinion, as written, was concurred in by three of the remaining justices of this court, with Mr. Justice Sadler specially concurring.

Appellants have also made comment upon the following New Mexico cases: City of Roswell v. Bateman, 20 N.M. 77, 146 P. 950, L.R.A.1917D, 365; Ellis v. New Mexico Construction Co., 27 N.M. 312, 201 P. 487; City of Clovis v. Scheurich, 34 N.M. 227, 279 P. 876.

Appellants state that the Bateman case, supra, did not involve the provisional order statutes, and that the court held in that case constitutional due process was fulfilled by a hearing upon foreclosure of an assessment lien.

Appellants say of the Ellis case, supra, that the court, following the Bateman case, dismissed the suit, which attempted to enjoin the construction of a municipal paving project under the provisional order statute.

It is interesting to note, however, that the opinion in the Ellis case [27 N.M. 312, 201 P. 491] stated the purpose of the notice in the provisional order law is to afford opportunity for discussion of the proposal, "and any objection at the hearing by one interested against the advisability of paving, or the extent or character of paving is unavailing against the decision of the city to the contrary." It is further held in the case that "the extent or character of paving, as proposed in the provisional order, which forms the basis of the notice required, may be deviated from." It is also said that, if the order were not clearly tentative, discussion upon it would be futile.

In the Ellis case the court also said:

"It is after such provisional order is made and after hearing and discussion thereon that final decision is made by the city, which decision forecloses objection."

In the Ellis case, supra, it is pointed out that the provisional order method places in the discretion and judgment of the governing body of the municipality the decision as to paving streets, such decision being final.

A hearing is not a trial. The hearing under the law in effect at the time of

the Ellis case was certainly not a trial of the property rights of any individuals. The hearing is spoken of by the writer of the opinion as a discussion. This discussion might involve a question of pecuniary benefit or loss to some individual just as it might also involve the wisdom of paving the proposed district. This case makes it clear that the final determination as to whether the proposed paving project shall be undertaken rests solely with the city council.

In the Scheurich case, supra, it was contended that the assessment levied to pay for the improvements constituted confiscation of the property. The trial court found that the assessments were greatly in excess of the value of the property which, with the improvements, would be worth much less than the assessments and so dismissed the suit, which was one by the city to foreclose paving certificates. The judgment entered in the trial court was sustained in this court by the holding that the finding was supported by substantial evidence, and other defenses were not well taken. It was concluded that the city, in view of these facts, acted in abuse of its discretionary power by determining to proceed with paving, and its determination was arbitrary in character and amounted to confiscation of property.

In their brief, appellants set out at length quotations from Oliver v. Board of Trustees of Town of Alamogordo, 35 N.M. 477, 1 P.2d 116, 118. In doing so, they admit that the holding in the case is apparently opposed to the contention which they make here; but their comment about the Alamogordo case is that the attack there was upon the wisdom and propriety of a paving project because of economic conditions at the time. That is true. They point out then that the attack in the present case is concerned in large part with the city's noncompliance with statutory duties in the preliminary determination of the improvements to be considered. It is twice stated in the Alamogordo case that the municipal council, in matters of this kind, is exercising its discretion and that, in the absence of a showing of fraud or conduct so arbitrary as to be equivalent to fraud, its decision is conclusive.

In the Alamogordo case there was a broad general allegation that the enhancement in value to the abutting property of appellants, resulting from the paving, would not be commensurate with the estimated cost proposed to be assessed against such property. Justice Sadler, writing the opinion, said, with reference to this declaration:

"This fact, if true, would not have warranted the lower court in setting aside the determination of the town board on the wisdom and propriety of paving and in enjoining it from prosecuting the paving program, as prayed for by appellants. The decision of the town board on these matters, absent

fraud or its equivalent, is controlling and conclusive. Ellis v. New Mexico Construction Company, 27 N.M. 312, 322, 201 P. 487."

The underlying reason for the court's taking the determination of the municipal council to be conclusive, in the absence of fraud or conduct so arbitrary as to be the equivalent of fraud, is that the council is a legislative body and has a right within the scope of its powers to legislate for the city. The courts cannot legislate and any legislative action by a duly constituted legislative body is final and binding as far as the courts are concerned except for the existence of fraud or such arbitrary conduct as amounts to fraud.

There is much authority to the effect that the city council in making a determination as to the creation of a paving district is acting in its legislative capacity. McQuillin in 14 Municipal Corporations, § 38.47, p. 157, says:

"The action of a municipal council in establishing such a district is legislative in character and has its origin in the taxing power of the state."

In Wolff v. City of Denver, 20 Colo.App. 135, 77 P. 364, involving a sewer district, this was said:

"A city council, in establishing a sewer district and determining its boundaries, is exercising a legislative power, having its origin in the taxing power."

See also Schaer v. City of Little Rock, 179 Ark. 68, 14 S.W.2d 237; City of Batavia v. Wiley, 342 Ill. 384, 174 N.E. 553; City of Springfield v. Owen, 262 Mo. 92, 170 S.W. 1118; Standard Inv. Co. v. Stephensmeier, Mo.App., 117 S.W.2d 620; Ricker v. City of Helena, 68 Mont. 350, 218 P. 1049.

McQuillin, op. cit., § 38.56, p. 172, says:

"It has been uniformly held that the action of the municipal legislature, in pursuance of statutory or charter powers, in establishing a district to be benefited by local public improvements so as to justify a special assessment against property lying within the district, is a legislative act which is conclusive in the absence of any evidence that it was procured by fraud, or proof that it is manifestly arbitrary or unreasonable, or that the assessment is palpably unjust and oppressive. Accordingly, the power of review of the courts is limited."

See also Fort Howard Paper Co. v. Fox River Heights Sanitary District, 250 Wis. 145, 26 N.W.2d 661; City of Marshall v. Elgin, Tex.Civ.App., 143 S.W. 670.

The propositions of law just above referred to seem to have practically the unanimous support of the courts throughout the country. We think the expressions of this court have several times

endorsed these propositions of law. If it has not already been made clear, we wish further to clarify the subject by declaring here that a city council in New Mexico, in establishing a municipal improvement district, is acting in its legislative capacity; and that its action in the absence of proof of fraud or such arbitrary conduct as amounts to fraud is conclusive. These declarations are certainly applicable to the first point stated by appellants in their brief.

■ These propositions of law existing, the burden of proof as to fraud or arbitrary conduct equivalent to fraud necessarily rests upon him who makes an attack upon the action of the city in determining that a municipal improvement district shall be established.

We rule Point One against appellants.

Under Point Two, appellants first complain that, under the preliminary resolution of July 14, 1954, the city called upon the city engineer for two types of paving, which were described in detail, without mention of curb and gutter.

Appellants further complain that the consulting engineer filed an estimate of cost on only one type of paving and including curb and gutter; also that the engineer when making his estimates of cost failed to make an estimate of benefits as to each tract involved.

■ ■It is first to be noticed that in each of the preliminary resolutions by which it was proposed to create Paving District 8, there was provision that the streets named be "graded, graveled, paved and otherwise improved." The authorities are to the effect that when it is declared that a street should be paved, the word "paved" includes not only the paving but also curbing and guttering as a necessary part of the project.

In City of Excelsior Springs v. Ettenson, 120 Mo.App. 215, 96 S.W. 701, 705, under a statute providing that cities would have power to cause " 'to be graded, constructed, reconstructed, paved, or otherwise improved and repaired all streets,' " the court said:

> "Curbing is a necessary part of paving to separate the sidewalk from the roadway for vehicles and it would require a strained construction of the enactment to say that the Legislature intended to authorize special assessments to be levied to pay for the cost of sidewalks and of paving the way for vehicles and not for the cost of the usual and necessary wall separating them. [Citing cases.]"

See also Bailey v. City of Des Moines, 158 Iowa 747, 138 N.W. 853; Board of Improvement, etc., of Fort Smith v. Brun, 105 Ark. 65, 150 S.W. 154; Muff v. Cameron, 134 Mo.App. 607, 114 S.W. 1125, 117 S.W.

116; Jacquemin v. Finnegan, 39 Misc. 628, 80 N.Y.S. 207; 14 McQuillin, op. cit. supra, § 38.13, p. 79; 31 Words & Phrases, Pave, p. 439.

In Warren v. Henly, 31 Iowa 31, the court held that the word "paving" applied to and described the construction of gutters; and that the curbstones are necessary in order to secure the gutter and are consequently a part of the pavement of the street. It was also held that when the necessary steps are taken to provide for paving streets, the curbing and guttering thereof are included in the term "paving". These principles have been thoroughly established and seem to be generally recognized.

In Wilson v. Chilcott, 12 Colo. 600, 21 P. 901, a wooden sidewalk had been constructed with assessment upon adjoining property to pay therefor. Later curbs and gutters were constructed of substantial cobblestones. The cost of all this was assessed against abutting property. Plaintiffs had refused to pay their assessments. The trial court granted a permanent injunction in their favor, and the City of Pueblo and the County Treasurer, whose duty it was, apparently, to collect, took an appeal.

The Colorado court had previously held that, under the laws at that time, special assessments could not be made upon abutting property for the grading and paving of streets. Palmer v. Way, 6 Colo. 106.

Authority did exist to assess abutting property for the construction of sidewalks.

In the Wilson case the court said that gutters are part of the street rather than of the sidewalks. It was also of the opinion that [12 Colo. 600, 21 P. 902]:

"The general rule is that the power to pave streets includes the power to supply gutters and curb-stones; but it does not follow that the power to construct sidewalks, and compel payment therefor by local assessments, carries with it the power to supply gutters and curb-stones by the same arbitrary means."

■ We hold that curbs and gutters are a part of paving of a street.

The next point made by appellants is that the engineer did not estimate benefits to accrue to the several property owners by the street improvements undertaken. We have previously set out that which the engineer is required to file with the city as to benefits and costs of paving.

It appears that the engineer did file in his report to the city an estimate of maximum benefits as to all properties embraced in the paving district, giving the names of the owners of the several lots or parcels.

Appellants had the maximum benefits reported by the engineer as to each of their lots. The estimated benefit, as shown by the record, is the exact amount as shown

to be the estimated cost of paving, including curb and gutter which are stated separately.

The exhibit showing the estimates of both benefits and costs appears to have been let into the record without any objection from appellants and without any comment by anybody in the lower court as to the column showing maximum benefits.

The New Mexico statute under which the engineer is required to make his estimate of maximum benefits provides that the estimate may be based on a front footage basis. The resolution directing the engineer to proceed to estimate both paving and cost of improvements followed the requirements of the statute.

There was no certainty about either cost or benefits. Any estimate made is the expression of the opinion of the maker. In this case the opinion is apparently that of the engineer. This is authorized by the statute providing that the engineer shall submit:

"* * * an assessment plat showing the area to be assessed and the amount of maximum benefits estimated to be assessed against each tract or parcel of land in said assessment area, said estimate to be based on a front foot zone, area, or other equitable basis, which basis shall be set forth in said resolution."

The matter of the method of estimating benefits seems to have been given full consideration by earlier cases from this court. Not only does the state statute provide for estimates by the front foot, but these cases have approved the method. Roswell v. Bateman, supra; Ellis v. N. M. Construction Co., supra; Hodges v. City of Roswell, 31 N.M. 384, 247 P. 310.

The attack as to benefits is not well taken.

Appellants complain that the resolution directing the engineer to proceed to make estimates called for two types of paving but that the engineer submitted estimates for one type of paving only.

It is undisputed that the appellants were present by their attorney at the protest meeting held by the city council. Before this meeting was held the engineer had delivered the plans and specifications and estimates to the clerk of the city. This was done at an earlier meeting of the council, at which time the council found the report of the engineer satisfactory and proceeded to call the public hearing. At the public hearing appellants knew, or should have known, by proper inquiry and examination at the clerk's office, what the report of the engineer was, including all of its details. The record does not show how the appellants have been prejudiced in any way by the report of the engineer as to type or types of paving.

360

Appellants filed a written protest with the city council and later filed a supplemental protest. They did not, in either of these protests, mention the matter of the failure of the engineer to make estimates of two different kinds of paving.

The complaint does not mention the failure of the engineer to make estimates of two types of paving. Appellants requested findings of fact but made no mention therein of the matter now complained of.

The trial court made its finding of fact approving the city's final determination overruling protests filed by appellants, and city's final determination to improve all streets described in the earlier resolution, except for the streets which were eliminated from the project. The trial court, by conclusion of law, held that the appellants had failed to carry the burden of proof assumed by them. This burden was to show that·the action of the city council in legislating as to the improvements in question was fraudulent or so arbitrary as to be fraudulent conduct; and the court held that without proof establishing fraud or the equivalent the court was without power to disturb the determination of the city.

 The complaint as to the matter of two types of paving being called for by the council and one type only being estimated by the engineer is first·called attention to, as far as we can find from the briefs and the record, in the argument in the brief-in-chief. The matter not having been properly called to the attention of the trial court is not entitled to consideration here. Moreover, there is no proof of fraud or of arbitrary conduct in the matter; and the city council having determined to adopt the estimates filed by the engineer, that determination will not be disturbed on account of the complaint here made.

Appellants' Point Three complains that the publication of the notice of the protest hearing was not made as required by law.

The statute requires publication be made "once each week for three (3) consecutive publications, the last publication to be at least one (1) week prior to the date of the protest hearing." § 14–37–17, N.M.S.A. 1953. The publication was made in each of three consecutive weeks, though not on the same day of the week, and the last insertion of the notice was more than a week before the date set for the hearing.

This notice was sufficient. Dewitz v. Joyce-Pruitt Co., 20 N.M. 572, 151 P. 237; De Graftenreid v. Casaus, 26 N.M. 216, 190 P. 728.

 It should be said, moreover, that appellants have no standing in court to raise this proposition. They were present before the council and filed written protests and had a hearing, and if there had been irregularities in the matter of publication of notice, they could not have complained thereof.

Appellants' Point Four complains that at the time of the public hearing, but before that hearing actually began, the city adopted a resolution that Galisteo Road, on which, as stated previously, appellants own property, would be paved regardless of the protests made.

The point as stated by appellants is misleading. As written into the minutes, there was a motion made by one of the councilmen saying that inasmuch as the city owned at least 50% of the property along Galisteo Road and Galisteo Parkway, these streets would be paved. The motion also contained the proposition that any street, where 51% of abutting owners protested, would be eliminated from the paving program. The motion carried. It was known to the council that there were not, and could not be, protests from 51% of the property owners abutting Galisteo Road and Galisteo Parkway; but appellants filed their protest as to Galisteo Road and were heard by the council.

The city council overruled appellants' protests by formal resolution ordering paving of Galisteo Road along with other streets. This order is what the statute requires as to the determination to pave. Appellants cannot complain that they have been denied the statutory right to be heard as to the propriety and advisability of making improvements, the cost or the manner thereof, or the amount to be assessed against their property. They battled out all their objections which, after all, were mere argument with the council, as its action is legislative. The protest hearing is much like a hearing before any legislative committee of the state legislature. The final determination was for the council to make.

The judgment of the lower court should be and is hereby affirmed.

COMPTON, C. J., and LUJAN, SADLER and McGHEE, JJ., concur.