416 P.2d 523

**William Earl BOWDICH et al., Plaintiffs-Appellees,**

v.

**The CITY OF ALBUQUERQUE, a Municipal Corporation, Defendant-Appellant.**

**No. 7729.**

Supreme Court of New Mexico.

July 5, 1966.

Frank Horan, Botts, Botts & Mauney, Gerald R. Cole, Albuquerque, for appellant.

Pete V. Domenici, C. LeRoy Hansen, Albuquerque, for appellees.

## OPINION

CHAVEZ, Justice.

This is an appeal from a judgment of the district court which decreed that the assessment roll adopted by defendant-city on March 26, 1963, was void and invalid.

In the spring of 1962, the voters of Albuquerque approved the issuance of storm sewer bonds. The construction of the sewer project required that substantial portions of Third Street be torn up in order to install a storm sewer. The city commission considered the age, condition, variance in width, and the fact that the street would be a direct route from a freeway to the downtown area; and decided that an overall savings could be effected by uniformly widening and rebuilding the street at the same time that the sewer work was being done.

On July 10, 1962, the city commission adopted a resolution directing an engineering firm to draw preliminary plans, cost estimates, and an assessment plat on such a project. These items were filed with the city clerk and a resolution, making the provisional order for the improvement, was adopted on August 7, 1962.

A protest hearing was set for September 4, 1962. Notice of the hearing was published in an Albuquerque newspaper and sent to each of the property owners. The meeting was held, the protests were heard,

and the city commission, at their meeting of September 25, 1962, overruled the protests.

On March 12, 1963, an ordinance was adopted by the city commission, providing for the manner of giving notice of filing of the assessment roll. A resolution was adopted setting a hearing for objections to the assessment roll on March 26, 1963. The commission adopted a total assessment of $130,782.87. In no case did the assessment against any parcel in the paving area exceed the estimated benefits conferred on that property, and appellees do not contend that they did.

The assessment roll was published on March 26, 1963, and this action was filed on April 12, 1963.

The trial court concluded, as a matter of law, that appellees' complaint was timely filed; that appellees had properly protested the assessment roll and each assessment therein, as well as the amount levied on each parcel of property in the area; that the provisional order method of assessment did not vest the City of Albuquerque with the power to assess the owners in the area for the cost of removal and replacement of pavement, curbs, gutters and sidewalks; that the assessment for the cost of removal and replacement of the pavement, curbs, gutters and sidewalks was arbitrary, capricious and confiscatory. The trial court held that the proceedings under which appellees' properties were assessed were irregular and invalid, and that the assessment on each parcel was, therefore, irregular and invalid.

Appellant contends that several errors in these conclusions require a reversal of the judgment. Initially, appellant contends that all attacks made by appellees' complaint are barred by the limitation periods in § 14-37-18, N.M.S.A., 1953 Comp., or § 14-37-20, N.M.S.A., 1953 Comp. (Supp.1963). We shall treat our interpretation of the applicability of these statutes as they apply to appellees' attacks on the assessment noted below.

The major thrust of appellant's appeal is its contention that the trial court erred when it concluded: (1) That the city could not remove and replace the streets, gutters, curbs and sidewalks, and assess the property owners in the area for the cost under the provisional order method; and (2) that the city acted arbitrarily, capriciously, confiscatorily and irregularly, so as to invalidate the assessment roll.

We first consider the question of whether the provisional order method for street improvement vests a municipality with the power to remove existing paving, gutters, curbs and sidewalks, to replace them, and to assess the property owners of the area for the cost.

■ The powers of a municipality are derived solely from the state. Town of Mesilla v. Mesilla Design Center & Book

Store, 71 N.M. 124, 376 P.2d 183; City of Santa Fe v. Gamble-Skogmo, Inc., 73 N.M. 410, 389 P.2d 13. Appellant contends that appellees attacked the method of paving, not the power itself, and are barred by the portion of § 14–37–18, supra, which provides:

"* * * any person interested, may file a written protest or objection * * * as to the propriety and advisability of making such improvements, as to the costs thereof and manner of payment therefor, and as to the amount thereof to be assessed against said property.

"Any person filing a protest or objection as aforesaid, shall have the right, within thirty (30) days after the city council or board of trustees has finally passed on such protest or objection, to commence an action or suit in any court of competent jurisdiction to correct or set aside such determination, * * *."

The statutory grant of power to improve streets, which is given to municipalities by § 14–37–16, N.M.S.A., 1953 Comp., vests only when the proper method to implement that power is adopted. The municipality has no right to exercise that power unless it follows the prescribed method. To suggest that appellees' failure to object vested a power in the appellant is not in accord with our rule, that all municipal powers are derived from the state.

The steps which a municipality shall take, when the governing body of the city feels that the interest of their municipality requires that any "streets, alleys, or any part thereof * * * be graded, graveled, paved, macadamized, sidewalked, lighted, or in any manner improved" are outlined in part in § 14–37–16, supra.

The term "paved," when used in a municipal resolution, includes the construction of curbs and gutters as a necessary part of the project. Feldhake v. City of Santa Fe, 61 N.M. 348, 300 P.2d 934. The term "paved" in § 14–37–16, supra, has the same meaning.

But do the terms "paved" and "sidewalked" in the same section bestow upon appellant city the right to remove existing improvements of this nature, replace those improvements, and assess the area property owners for the cost?

Appellees direct our attention to the fact that New Mexico has two methods by which municipalities may improve their streets, the provisional order method adopted in 1903 (§ 14–37–16, supra) and the petition method adopted in 1913 (§ 14–37–23, N.M.S.A., 1953 Comp.). The latter method employed the specific term "repaving" in describing the powers which a city might obtain through consent of a majority of the property owners in the area. (The proportion of required owner-consent was raised to 66⅔% in 1949.) While it is true that these statutes have been

reconsidered at times, and the term "repave" has not been added to the enumerated actions possible under the provisional order method until recently (§ 14–32–3, 1965 Pocket Supp.), we do not consider this fact conclusive.

In Pennsylvania, a statute with words similar to those appearing in our statute has been interpreted and the meaning of the word "pave" was found to exclude the power to repave. City of Philadelphia v. O'Brien, 176 Pa.Super. 235, 107 A.2d 587; City of Philadelphia v. Pachelli, 168 Pa. Super. 54, 76 A.2d 436. Hamilton, Law of Special Assessments, § 249, pp. 211–212, confirms this statement, but says:

> " * * * In Pennsylvania it is the rule that repaving is not a charge upon an abutter, but this is not the general rule. The power to make local assessments upon property specially benefited, is a continuing one, in the absence of charter restrictions, and abutting owners may have the cost of repaving, as well as of paving, streets assessed upon their property."

State ex rel. Wheeler v. District Court, 80 Minn. 293, 83 N.W. 183, supports this concept. In that case the court held that the power to grade, fill, level, pave, curb, wall, widen, contract, alter, and straighten any street, levee, alley or highway, included the power to repave.

In Edgington v. City of Memphis, 152 Tenn. 152, 274 S.W. 548, the court found that the power to open, widen, extend, grade, curb, gutter and pave, included the power to repave and assess adjoining property owners. It cited authorities expressing the same concept, that the power to pave is a continuing power and it is not exhausted when initially exercised.

In Gillespie v. Fuller Const. Co., (Tex. Civ.App.1933), 66 S.W.2d 798, the court held that the charter which gave the city the power to improve "any street * * * by filling, grading, raising, macadamizing, remacadamizing, paving, repairing, or otherwise improving the same" allowed the city to repave. It also accepted the continuing power theory.

McQuillin, Municipal Corporations, Vol. 14, 3rd Ed., § 38.16, adopts this same view and says that repaving is a continuation of the paving power and the benefited owners may be assessed for the cost. This, we believe, is the majority view and is the one which our legislature intended when it adopted the provisional order method of street improvement, regardless of its later adoption of another method. Likewise, the same view is as applicable to the term "sidewalked" as to the term "paved."

Appellees argue that such an interpretation gives appellant the power to remove adequate improvements, in good condition, and replace them whenever it desires.

Further, they say, the city can do so in a manner which benefits the city as a whole more than the property owners on whom the cost is placed.

The findings of the trial court indicate that such was the situation in the instant case, but this is true only to a well-defined extent. Section 14–37–20, supra, strictly limits any assessment to the "estimated benefits to the property assessed." For example, if the city exercised its power, removed recent improvements and replaced them with a freeway (which would probably benefit the city as a whole much more than the property owners in the area), the property owners are liable only for as much of the cost as their property is enhanced by the new route. Through recourse in the courts, appellees may present their own appraisers to ensure that the city does not assess them for more than the amount that their property has been benefited. Although appellees do not argue, and the court did not find, that appellees' properties were not benefited by as much as they have been assessed, we do not see that our interpretation will cause them to lose property unconstitutionally.

If the trial court's conclusion, which permitted appellant to assess the owners for only the cost of widening the pavement, was based on the conclusion that the city did not have the power to assess for repaving, it must be reversed in the light of what we have said.

The trial court's same conclusion might have also provided the foundation for its additional conclusions, that appellant's assessment was arbitrary, capricious, confiscatory and irregular, but the parties call attention to other factors which may have prompted such conclusions and we feel it proper that we consider them.

Some of the findings indicate that appellant replaced adequate improvements, the cost of such replacement being well above the cost of maintenance work that would have been required. These findings could support a conclusion that appellant's decision was arbitrary. Such facts concern the advisability of proceeding with the project and § 14–37–17, N.M.S.A., 1953 Comp., provides that the municipal governing body shall hold a hearing, at which time interested persons are to be heard concerning matters of this nature. Such a meeting was held on September 4, 1962. Appellant then referred the protests to the city clerk for tabulation and they were overruled on September 25, 1962. Appellees were barred thirty days after that date, by § 14–37–18, supra, from seeking judicial review of appellant's decision.

Another fact which could have supported the trial court's conclusion of arbitrariness and irregularity was its finding that notice given to the owners failed to inform them that they were to be assessed for removal of the old improvements and the cost of the replacement.

■ Appellant took two steps which appellees contend misled them. First, in addition to the formal notice of the proposed project, appellant also sent a circular, in question and answer form, to the owners. One question and answer was:

"Q. If curb-gutter, sidewalk, or paving already are in place and must be removed and replaced, will property be assessed for it?

"A. No, if it was constructed according to City specifications, and has not yet served its useful life in the judgment of the City."

This statement was corrected at the protest meeting held September 4, 1962. Two city commissioners testified that it was explained if present gutters, curbs, and sidewalks did not meet the new grade, or were not in good condition, removal and replacement would be necessary and the property owners would be assessed. While such action might not be adequate correction in some instances, it should be noted that several attorneys representing many of the owners, as well as many of the owners themselves, were present at that meeting. We do not believe that those who opposed the project were misled after the time that the protest meeting was held, and we are unable to find testimony of any of appellees to indicate that they were so misled.

The second action taken by appellant, to which appellees object, was a resolution passed by the city commission at their meeting on September 25, 1962. The minutes of this meeting read in part:

"After discussion it was moved by Commissioner Atkinson and seconded by Commissioner Heilman that the protests on Paving District No. 157 be overruled, and that the paving district proceed on the basis that assessments are made to the property owners in the estimated amount of $99,272.00 including the expenses. Commissioners Brown, Heilman, O'Toole, Atkinson, and Westfall voting yes. Motion carried."

The figure of $99,272 cited by the commissioner is considerably less than the $120,000 to $130,742.87 which the testimony indicates would eventually be assessed against the properties in the area.

■ There is a limit to the amount by which a city may underestimate the cost of a project, thus causing the actual assessment to be unreasonable. In Parker v. City of Hood River, 81 Or. 707, 160 P. 1158, an assessment 90% higher than the estimated cost was held to be unreasonable.

■ However, an estimate is advisory only and, in the absence of fraud, the fact that the assessment for the cost exceeds the estimated cost does not necessarily invalidate the assessment. Kelley v. Morton, 179 Mo.App. 296, 166 S.W. 840; Auditor General v. Chase, 132 Mich. 630, 94 N.W. 178. In addition, the $99,272 was not the only estimate given. The notice sent to all of the owners, and published on three

occasions, estimated the cost at $130,742.87. The assessment was not in excess of the benefits, and we find nothing in the statutes to prohibit appellant from assessing an amount equal to the estimated benefits. Feldhake v. City of Santa Fe, supra; Hedges v. City Commission of City of Albuquerque, 62 N.M. 421, 311 P.2d 649; Teutsch v. City of Santa Fe, 75 N.M. 717, 410 P.2d 742.

We believe that appellant acted within the power granted to it by statute when it created the paving district in question. Generally, the only limitations on the exercise of the power of special assessment are that the improvements must be public and must confer special benefits on the property assessed. Irish v. Hahn, 208 Cal. 339, 281 P. 385, 66 A.L.R. 1382. And with the cost to be borne by each tract not to exceed the estimated benefits thereto. Teutsch v. City of Santa Fe, supra. We find no evidence that the misleading statements made by appellants show the "existence of fraud or such arbitrary conduct as amounts to fraud" to warrant court interference with the legislative power which was exercised. Feldhake v. City of Santa Fe, supra.

The trial court found that appellant did not determine the condition of the gutters, sidewalks and curbs before removing them. Appellees indicate that this finding was based on testimony that the city removed some improvements solely because they did not meet the new grade. While these facts may be relevant, in considering whether the cost of removal and replacement sewer should be charged to the sewer project or the street project, the city cannot be held as being arbitrary in making such removals. The testimony is uncontradicted that appellant salvaged all existing sidewalks which were in good condition and met the grade of the new work. Therefore, we hold that the trial court's conclusions of law Nos. 6, 7 and 8, that the assessment was arbitrary, capricious and confiscatory, are not supported and cannot stand.

The trial court further found that the paving project was part of a storm sewer project, to be paid from general obligation bonds. The trial court also found that appellant was unable to allocate the numerous items of removal and replacement between the two projects, and appellees could not ascertain the specific items for which they were being assessed at the time the assessment roll was adopted on March 26, 1963.

This is clearly an attack on the assessment roll and appellees' suit, which was filed on April 12, 1963, was within the time allowed after the assessment roll was published "to commence an action * * * to correct or set aside" appellant's decision. Section 14–37–20, supra.

Appellant made it clear to appellees that the sewer project, which appellant con-

siders part of the justification for the paving project, was to bear all costs which could be properly charged to it. The record discloses that the total assessment costs, which were to be paid by the property specially benefited, amounted to $130,742.87. There is evidence that the total cost of curbs, gutters, sidewalks and paving is $174,150.00. It follows that the difference between these two amounts, or $43,407.13, is the amount of the cost attributable to the storm sewer project. Findings Nos. 19, 20 and 21, whether or not supported by substantial evidence, furnish no proper basis for the conclusion that appellant's determination was arbitrary, capricious and confiscatory, and said findings are incorrect, or at best very doubtful.

We do not reach appellant's final contention, concerning admission of evidence which was not before the city commission when it made its decision, because this opinion does not rely on such evidence, and any evidence which will be considered on remand either was, or should have been, before the commission when it adopted the assessment roll.

The case is reversed and remanded to the district court, with direction that the judgment heretofore entered be set aside, and to proceed in a manner consistent with this opinion.

It is so ordered.

MOISE and COMPTON, JJ., concur.