695 P.2d 490

**Richard CLAYTON and Wayne Walling, Plaintiffs-Appellants,**

v.

**CITY OF FARMINGTON, Defendant-Appellee.**

**No. 7741.**

Court of Appeals of New Mexico.

Jan. 22, 1985.

Robert L. Finch, Farmington, for plaintiffs-appellants.

Dwight D. Arthur, City Atty., Richard L. Gerding, Tansey, Rosebrough, Roberts & Gerding, P.C., Farmington, for defendant-appellee.

## OPINION

HENDLEY, Judge.

Plaintiffs, residents of the City of Farmington, New Mexico, own property located within an improvement district created by the City of Farmington. The district was created under the authority of NMSA 1978, Sections 3–33–1 to –43 (Repl.Pamp.1984). Plaintiffs were assessed for part of the costs of certain road improvements within the district. Subsequently, plaintiffs filed a petition in district court objecting to the assessment and asking for an injunction prohibiting the City from assessing them. Plaintiffs claimed that the assessment of the properties exceeded benefits, and that the City's method for determining benefits was arbitrary. The trial court dismissed plaintiffs' complaint. The court found that plaintiffs failed to present evidence which would support a conclusion that the City acted arbitrarily, capriciously, or unreasonably in assessing their property. The court concluded, as a matter of law, that the City's actions in regard to plaintiffs' properties were valid and regular in all respects. Plaintiffs appealed. We affirm.

A governing body can create an improvement district when it determines a district is necessary for public safety, health, and welfare. It may create the district by the provisional order method or by the petition method. With certain exceptions not relevant in this case, the district includes, for purposes of assessment, all property which the governing body determines is benefited by the improvements, and which abuts any street on which an improvement is to be constructed. Section 3–33–1. An improvement district can be created to construct, among other things, curbs, gutters, and sidewalks, as well as to pave and repave

streets. Section 3–33–3. Under the provisional order method, which was used by the City in this case, the governing body directs the (City's) engineer to prepare preliminary plats and an estimate of the costs of the improvement district. The engineer is required to prepare an assessment plat of the area to be included in the district, and an addendum to the plat showing the amount of maximum benefit estimated to be assessed against each tract or parcel on the front foot, zone, area, or other equitable basis. Section 3–33–11. The front foot basis was used in this case.

### Standard of Review

■ We review the City's determination that the assessed property will be benefited by the improvement only to determine whether the City acted in an arbitrary manner in reaching its decision. *Oliver v. Board of Trustees of Town of Alamogordo*, 35 N.M. 477, 1 P.2d 116 (1931). As stated in *Feldhake v. City of Santa Fe*, 61 N.M. 348, 300 P.2d 934 (1956):

> The underlying reason for the court's taking the determination of the municipal council to be conclusive, in the absence of fraud or conduct so arbitrary as to be the equivalent of fraud, is that the council is a legislative body and has a right within the scope of its powers to legislate for the city. The courts cannot legislate and any legislative action by a duly constituted legislative body is final and binding as far as the courts are concerned except for the existence of fraud or such arbitrary conduct as amounts to fraud.

\* \* \* \* \* \*

> \* \* \* [T]he burden of proof as to fraud or arbitrary conduct equivalent to fraud necessarily rests upon him who makes an attack upon the action of the city in determining that a municipal improvement district shall be established.

*See also Bowdich v. City of Albuquerque*, 76 N.M. 511, 416 P.2d 523 (1966); *Teutsch v. City of Santa Fe*, 75 N.M. 717, 410 P.2d 742 (1966); *Hedges v. City Commission of City of Albuquerque*, 62 N.M. 421, 311 P.2d 649 (1957); *Shalit v. City Commission of City of Albuquerque*, 62 N.M. 55, 304 P.2d 578 (1956).

### Method Used to Assess Benefit

The first issue on appeal is whether the method used by the City to determine benefits to plaintiffs' properties was arbitrary. The consulting engineer hired by the City to prepare documents for the assessment hired, in turn, an appraiser to assist him in determining benefits to properties located within the improvement district. The following is an outline of the procedure followed by the appraiser in his determination of benefits to the assessed properties:

1. He looked at residential properties recently sold in Farmington. He divided the properties into three price categories: $16,000–$40,000; $40,000–$75,000; over $75,000.

2. He determined the per-square-foot selling price for residential properties in the lowest price category, breaking those properties into a group with paving, and a group without paving. The average value of the unpaved group: $29.64 per square foot; the average value of the paved group: $32.44 per square foot.

3. He figured the percentage difference between the paved and unpaved selling prices. There was a 9.4% increase in price from the unpaved to the paved.

4. He took the average sale price of a house in the lowest priced unpaved group—$30,200. A 9.4% increase over $30,200 is $2,838.

5. He determined the typical lot frontage in the lower-priced category—seventy feet.

6. He took the average increase in value (at no. 4 above), and divided it by the typical lot footage of seventy feet, and arrived at a figure of $40.54 benefit per front foot in the lowest price category.

7. He was informed by the engineers that costs were estimated at $37.50 per front foot, so he adjusted the benefits per-front-foot figure to equal the cost figure.

Plaintiffs argue that this method was arbitrary because it provided a meaningless

comparison. They claim the comparison was meaningless because the sample properties used by the appraiser, consisting exclusively of residential properties, were fundamentally different from plaintiffs' properties. Plaintiffs' tracts were vacant lots. Other parcels were vacant trailer lots. The gist of plaintiffs' argument is that the benefit a residential lot receives from an improvement cannot be compared to a benefit a vacant lot receives. Because the two cannot be compared, plaintiffs contend the City's method of determining plaintiffs' benefits by comparing their property to residential property was arbitrary. It is important to note that plaintiffs do not attack the comparison method of appraisal itself, but only the City's choice to use residential properties rather than vacant properties in its model.

 Underlying plaintiffs' argument is their assumption that they are entitled to have their property assessed on the value of its present use. We disagree. 14 E. McQuillin, *The Law of Municipal Corporations* § 38.33 (3d ed. 1970) states:

Market value is often taken to measure the benefits, but the measure of special benefits to the properties is not solely that of enhanced value thereof. In determining whether property has been benefited, the question is whether the market value of the property has been increased by the improvement, and it is not confined to benefits conferred for the particular use to which it is being devoted at the time.... The use to which the property is put cannot of itself determine the question of benefits, but the usual test is the increase of value for any use to which the land might be adapted. [Footnotes omitted.]

See also *City of Dallas v. Firestone Tire & Rubber Co.,* 66 S.W.2d 729 (Tex.Civ.App. 1933). In discussing whether the present use of assessed property was determinative of the amount of benefits accruing to the property, the court in *City of Hallandale v. Meekins,* 237 So.2d 318 (Fla.App.1970) (quoting *Howard Park Co. v. City of Los Angeles,* 119 Cal.App.2d 515, 259 P.2d 977 (1953)), reasoned:

"We are constrained to hold that a special use to which property is put cannot be considered as affecting the amount of benefits, but, that such amount is to be measured by the benefit which would be received by the property if devoted to any use which might reasonably be made of it. It would be inequitable and unfair to exempt particular property from an assessment when a special use is voluntarily made of it by the owner, and which he may change at any time so as to reap the benefits of an improvement that does not, at the time an assessment is made, benefit him because of a special use to which he has voluntarily put his property."

See also *City of Lawton v. Akers,* 333 P.2d 520 (Okl.1958). We adopt the rule that benefits can be determined by considering reasonable future uses to which the property can be put. We hold that it was reasonable to assume that plaintiffs' properties can be put to lowest-price-category residential uses in the future. In light of this holding, we conclude it was not arbitrary for the City to use the value of residential properties when determining the benefits to accrue to plaintiffs' properties. *Compare City of Dallas v. Firestone Tire & Rubber Co.* (it was error for trial judge to charge jury that it might not consider reasonable probabilities for future use if sufficiently near in time and definite in kind to be of practical importance) and *City of Lawton v. Akers* (where plaintiffs' lots were restricted by covenant to residential purposes, it could not be said that they may within the foreseeable future be converted to business properties and thus benefited by the improvement). In light of our holding, if it is reasonable to assume that plaintiffs' properties can be put to lowest-price category residential uses in the future, then it was not arbitrary and fraudulent for the City to use the value of residential properties when determining the benefits to accrue to plaintiffs' properties.

 The Clayton properties consist of a vacant 9.7-acre tract and four smaller trail-

**344**

er lots. The large tract is adjacent to a planned shopping center. Plaintiff Clayton testified that he would lease his property for business building purposes if the price was right. The area surrounding the Clayton properties has been platted and subdivided, indicating that it is reasonable to assume that the land can be developed in the future. We hold that this is substantial evidence to support the trial court finding that the City's use of a model based on future use of properties for determining the value of the benefits to the Clayton properties was not arbitrary.

The Walling property consists of a 6-acre vacant lot. Only the eastern portion of his property abuts the improvement, so only that portion was assessed. Plaintiffs fail to mention in their brief, however, that the City reduced Walling's assessment by 75%. The original assessment, based on $37.50 per front foot, was for $13,690.00. That figure was reduced to $3,422.50.

The 75% reduction in assessment takes the Walling property out of, and far below, the category of lowest-priced residential properties against which benefits were determined for properties within the improvement district. Because of this radical reduction, we do not entertain Walling's argument that the City erred in comparing his property to residential property. The record does not support his claim that the City in fact applied the method challenged on appeal to his property.

 Plaintiff Walling's argument becomes, then, a bare assertion that his property is not benefited by the improvement. The crux of his argument is that, because of the difference in elevation between his property and the improved road, there will be no access to the improvement from his property. However, the City produced evidence that it considered dust and drainage control to be beneficial to the Walling land, and that it reduced the Walling assessment by 75% to compensate for the access problem. This is substantial evidence to support the trial court finding that the City did not act arbitrarily in its assessment on the Walling property.

The second issue is whether the City acted arbitrarily in assessing plaintiff Walling when, although his land abutted the improvement, he had no access to the improvement from his land. As discussed above, the City presented substantial evidence of other benefits to the Walling property to support the trial court's finding that the City did not act arbitrarily in assessing the Walling property.

 The final issue on appeal is whether the City acted arbitrarily in assessing plaintiff Walling when the improvement abutting his land involved repaving of a street. Plaintiffs' contention is totally without merit. "[R]epaving is a continuation of the paving power and the benefited owners may be assessed for the cost." *Bowdich.* Furthermore, Section 3–33–3(A) specifically enumerates repaving as a project which an improvement district may engage in.

The trial court's dismissal of plaintiffs' complaint is affirmed.

**IT IS SO ORDERED.**

NEAL and MINZNER, JJ., concur.