2003-NMCA-041

63 P.3d 524

VILLAGE OF ANGEL FIRE, New Mexico, Appellee–Petitioner,

v.

Scott WHEELER, Lorna L. Santillo, Robert T. House, Lou House, and Janet D. Reed, Appellants–Respondents.

No. 22,316.

Court of Appeals of New Mexico.

Jan. 2, 2003.

Certiorari Denied, No. 27,882, Feb. 10, 2003.

Joseph F. Canepa, Patricia J. Turner, Canepa & Vidal, P.A., Santa Fe, for Petitioner.

Mary E. Humphrey, El Prado, for Respondent.

## OPINION

PICKARD, Judge.

{1} In this case, we consider the type of record needed by a district court in its review on appeal of legislative action by a municipality. We decide that duly approved, written minutes of a policymaking body can

be sufficient to constitute an official transcript for review, pursuant to the Rules of Civil Procedure governing administrative appeals. We also decide that duly approved and executed resolutions of a policymaking body can appropriately serve as a statement of the legal and factual basis for the body's decisions, pursuant to statutory mandate governing appeal of agency final decisions.

## FACTS AND BACKGROUND

{2} Appellee–Petitioner Village of Angel Fire (hereinafter "Village") seeks review by petition for writ of certiorari of the decision of the district court reversing resolutions adopted by the Village Council that created and effectuated a special assessment district. We granted the petition, and we now reverse and remand to the district court to conduct an appellate review of the Village proceedings, using the duly approved minutes of the Village meetings as the official transcript of those proceedings.

{3} Beginning in late 1997, the Village began the process of creating, adopting, and effectuating a special assessment district pursuant to the Improvement Districts Act, NMSA 1978, §§ 3–33–1 through –43 (1965, as amended through 2001). The Village states, and Appellants–Respondents (hereinafter "Land Owners") do not dispute, that the Village was endeavoring to improve the sewer system in response to concerns about potential ground water contamination along the State Highway 434 corridor into the Village. In March 1998, the Village adopted a resolution directing preparation of preliminary plans, and in October 1998, the Village Council accepted these preliminary plans that had been prepared by an assessment engineer. In February 1999, the Village adopted a resolution (hereinafter "Resolution 1999–14") creating the special assessment district based on the 1998 engineer's report. In May of 2000, the Village filed the assessment roll for this district and then held public hearings on the assessment roll in June 2000. On June 13, 2000, the Village adopted a resolution revising and confirming the assessment roll (hereinafter "Resolution 2000–15"). By the end of the process, the assessment district was made up of 63 land owners situated along State Highway 434, all of whom were assessed, according to the engineer's report, an amount based on the cost of the improvement and the special benefit conferred on each owner.

{4} Pursuant to the Open Meetings Act and the New Mexico Administrative Code, the Clerk of the Village prepares minutes of meetings of the Village Council from tape recordings made at each meeting. The minutes are approved at subsequent meetings and then become the official record of the proceedings, which are kept by the Village in perpetuity. Once the written minutes are approved by the Village Council, the tapes are re-used or discarded. This is the regular practice of the Village. Accordingly, the official minutes of each meeting at issue in the appeal are included in the record, but there are no tapes of any proceedings for the district court to review.

{5} The Land Owners in this case are the owners of four parcels of land. Their property is included in the assessment district, and they have each been assessed according to the assessment roll adopted by the Village on June 13, 2000. Three of the four Land Owners filed written protests of the assessment roll and made oral protests at the public hearing on June 5, 2000. All four appealed the adoption of Resolutions 1999–14 and 2000–15 to the district court, pursuant to Section 3–33–22 (allowing appeals of assessment hearings by governing bodies); NMSA 1978, § 39–3–1.1 (1999) (allowing appeals of agency final decisions placed under the authority of this statute); and Rule 1–074 NMRA 2002 (governing review by the district courts of administrative decisions and orders). The Land Owners claimed that the assessment district was invalid *ab initio* because of violations of the notice requirement of the Open Meetings Act and because the adoption of Resolutions 1999–14 and 2000–15 was fundamentally unfair and not supported by substantial evidence.

{6} The district court, in its capacity as an appellate reviewer pursuant to Section 39–3–1.1, did not rule on the merits of Land Owners' appellate issues as raised in their statement of issues, and instead reversed Resolutions 1999–14 and 2000–15, finding that, due to a failure to preserve the whole record for

purposes of appeal, the Village's Resolutions were not supported by substantial evidence and, therefore, were arbitrary and capricious and invalid as a matter of law. The Village petitioned this Court for a writ of certiorari challenging the district court's order, and we granted the petition.

## SCOPE AND STANDARD OF REVIEW

■ {7} The Court of Appeals is limited by Rule 12–505 NMRA 2002 in its review of the district court's decision in an administrative appeal. *C.F.T. Dev. v. Bd. of County Comm'rs*, 2001–NMCA–069, ¶ 8, 130 N.M. 775, 32 P.3d 784, *overruled on other grounds by Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003–NMSC–005, ¶ 16, 133 N.M. 97, 61 P.3d 806. The four grounds upon which this Court may grant a writ are (a) a conflict between the district court order and a prior appellate opinion of this Court or the Supreme Court; (b) a conflict between the district court order and any statutory provision, ordinance, or agency regulation; (c) a significant question of law under the New Mexico or United States Constitutions; or (d) an issue of substantial public interest that should be determined by the Court of Appeals. *Id.;* Rule 12–505.

{8} The Village raises two issues for this Court to consider in this petition: (1) whether the district court properly interpreted Rule 1–074(H)(5) in finding that the whole record was not preserved because the tapes of the Village Council proceedings had been destroyed and (2) whether the district court properly ruled that the Village's Resolutions were arbitrary and capricious because, contrary to the requirements outlined in Section 39–3–1.1, the Resolutions failed to state the factual and legal basis of the Village's decisions. We determine that both issues present a conflict between the district court order and a statute or a regulation, and to the extent that Rule 1–074(H)(5) and Section 39–3–1.1 have not been interpreted by the New Mexico courts, both issues present an issue of substantial public interest. *See* Rule 12–505(B) and (D).

{9} As grounds for affirmance, the Land Owners argue that there was not substantial evidence to support the factual basis upon which the Village made its decisions and that

the Village did not strictly adhere to the requirements of the Open Meetings Act or the Improvement Districts Act. These issues were not ruled upon by the district court except as subsumed in the issue on which we granted certiorari dealing with the absence of a record. Therefore, this Court will not review on certiorari whether the Village acted in an arbitrary and capricious manner, and similarly we will not review whether there was substantial evidence to support the Village's Resolutions; that is the province of the district court acting in its appellate capacity pursuant to Section 39–3–1.1. *C.F.T. Dev.*, 2001–NMCA–069, ¶ 12, 130 N.M. 775, 32 P.3d 784. Accordingly, we deem it prudent to address only the questions upon which we granted certiorari and allow the district court to conduct its appellate review in the first instance.

{10} The Village argues that the district court applied an incorrect standard of review in that it appeared to conduct a de novo review. If the district court did apply a completely erroneous standard of review, we would be empowered to examine whether the district court misapplied or misapprehended its appellate jurisdiction because, in that case, the district court's decision would conflict with cases of this Court or the Supreme Court. *See N.M. Bd. of Psychologist Examiners v. Land*, 2003–NMCA–034, ¶¶ 6, 18, 34, 133 N.M. 362, 62 P.3d 1244 (App.2002). In addition, such an error would clearly be within our review under *Rio Grande Chapter of Sierra Club*, 2003–NMSC–005, ¶ 16, 61 P.3d 806.

■ {11} However, in this case, the district court determined only that the record presented to it was insufficient to actually conduct an administrative review, and accordingly it did not examine the record for substantial evidence on the record as a whole. Therefore, we will not address the issue of using an incorrect standard of review at this time. However, we remind the district court that, on remand, the district court in its appellate capacity may reverse the Village's decision only if it determines that the Village acted fraudulently, arbitrarily, or capriciously; if the decision was not supported by substantial evidence; or if the

agency did not act in accordance with the law. *See* § 39–3–1.1(D); *see also* § 3–33–13(C) (conferring power of district court to review a municipality's approval of an assessment district). The district court is to review the whole record to "ascertain whether there has been unreasoned action without proper consideration or disregard of the facts and circumstances." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997–NMCA–044, ¶ 7, 123 N.M. 329, 940 P.2d 177. Importantly, the district court may not substitute its judgment for that of the Village and must evaluate whether the record supports the result reached, not whether a different result could have been reached. *See, e.g., Zamora v. Vill. of Ruidoso Downs*, 120 N.M. 778, 784, 907 P.2d 182, 188 (1995); *Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 71, 716 P.2d 645, 649 (Ct.App.1986), *limited on other grounds by Graham v. Presbyterian Hosp. Ctr.*, 104 N.M. 490, 491, 723 P.2d 259, 260 (Ct.App. 1986). If there is evidence in the record to support the result reached by the Village, the district court is to affirm, even if it would have found the facts differently or reached a different result had it been the decision maker in the first instance. *State v. Seal*, 75 N.M. 608, 609–10, 409 P.2d 128, 129 (1965).

## ISSUES ON CERTIORARI
### Issue One—Adequacy of the Record

{12} In its order reversing the Resolutions of the Village, the district court found that review of the whole record on appeal was impossible due to the destruction of the tape-recorded proceedings and that the district court could not, due to the failure to preserve the whole record, find that the decisions made by the Village underlying Resolutions 1999–14 and 2000–15 were supported by substantial evidence.

{13} The Village argues that the approved minutes of each meeting, which are included in the record, are the official transcript of the proceedings. It relies on NMSA 1978, § 10–15–1(G) (1999), of the Open Meetings Act, and NMSA 1978, § 3–13–1(1985), outlining the duties of the clerk of a municipality, both of which require that policymaking bodies keep written minutes of meetings, but neither of which require that tapes of the proceedings be made or kept. It also relies on the New Mexico Administrative Code, which requires that minutes of meetings of policy-making bodies be kept permanently, but makes clear that tapes need not be retained after the minutes have been transcribed and accepted by the body. 1.15.2.119 NMAC (2002) (formerly numbered 1 NMAC 3.2.90.10.A119) The Village further argues that the clause, "if any," in Rule 1–074(H)(5) modifies the complete phrase, "transcript of the proceedings," meaning then that the rule requires transcripts of the proceedings to be provided if any transcripts were made.

{14} The Land Owners argue that proceedings held pursuant to the Improvement Districts Act creating and effectuating a special assessment district are administrative adjudicatory proceedings, not legislative proceedings, because individual land owners are ultimately assessed and must pay additional taxes as individuals. They argue that because individual rights are affected, the Open Meetings Act provision regarding minutes does not apply and a more complete record is needed in accordance with due process requirements of "trial-type" procedures. They further argue that the clause, "if any," in Rule 1–074(H)(5) modifies the word immediately preceding it, meaning then that the rule requires transcripts only if any proceedings have taken place.

### Creating a Special Assessment District is a Legislative Proceeding

{15} The Land Owners urge us to determine that the proceedings of the Village Council held pursuant to the Improvement Districts Act are administrative adjudicatory acts because they resulted in assessments of individual land owners. They argue that an exact copy of the proceedings is necessary for review in order to afford due process rights of the individuals who must pay the costs of the special assessment. We disagree.

{16} Our Supreme Court has upheld the constitutionality of the Improvement Districts Act. *See Fowler v. City of Santa Fe*, 72 N.M. 60, 63, 380 P.2d 511, 512 (1963) (finding that laws authorizing the assessment of benefits by the front-foot rule are not in violation

of state or federal constitutions and are not a taking of property without due process); *Ellis v. N.M. Constr. Co.*, 27 N.M. 312, 321–22, 201 P. 487, 491 (1921) (finding that the provisional order method paving law does not violate the constitution). Our Supreme Court has also determined that a city council acts in its legislative capacity in establishing a municipal improvement district. *Feldhake v. City of Santa Fe*, 61 N.M. 348, 357, 300 P.2d 934, 939 (1956); *see also Bowdich v. City of Albuquerque*, 76 N.M. 511, 519–20, 416 P.2d 523, 528–29 (1966) (reviewing the city's adoption of an assessment roll to construct sewers only for arbitrary, capricious, and irregular behavior); *Rowley v. Murray*, 106 N.M. 676, 680, 748 P.2d 973, 977 (Ct.App. 1987) (observing that when forming an assessment district, questions of whether there is a special benefit and the amount of the benefit are decisions best made by the legislative body imposing the assessment); *Clayton v. City of Farmington*, 102 N.M. 340, 342, 695 P.2d 490, 492 (Ct.App.1985) (quoting *Feldhake* in affirming that a city council's function in creating an assessment district is legislative and applying a standard of review that is deferential to the legislative body). We find no basis to depart from settled law to determine that the Village's proceedings to create and effectuate a special assessment district are anything but legislative proceedings. Moreover, the Land Owners below acknowledged the legislative nature of the proceedings and the command of *Feldhake*. The ultimate issue then is not to examine each individual's assessment, but rather it is to examine whether the Village met its statutory mandate and whether there is a reasonable basis for its decision. *See Rowley*, 106 N.M. at 680, 748 P.2d at 977. Accordingly, we consider the type of record necessary for appellate review by the district court, and the district court shall review that record, using the standard of review outlined above.

### Interpretation of Rule 1–074(H)(5)

{17} Implicit in the district court's finding that the record was incomplete is an interpretation of Rule 1–074(H)(5), determining that the record of administrative proceedings must include either a transcript made from audio tapes or the tapes themselves if the proceedings were in fact tape recorded. The rule states:

> H. **Record on Appeal** ... For the purposes of this rule the record on appeal shall consist of:
>
> ....
>
> (5) the transcript of the proceedings, if any. If the transcript of the proceedings is an audio or audio-video recording, the agency shall prepare and file with the district court a duplicate of the tape and index log. If the proceedings were stenographically recorded, the agency shall transcribe and file with the court those parts of the record specified by any party.

Rule 1–074(H)(5).

{18} Though both parties assert what could be a correct grammatical interpretation that would render this portion of the rule ambiguous, we need not interpret that phrase to settle this case. Since there were proceedings and there is a submitted transcript in the form of official minutes, the question for this Court to consider on this petition is whether the official minutes of the Village's proceedings are also the official transcript adequate for appellate review. We hold that they are.

{19} This question is an issue of first impression in New Mexico. Generally, the purpose of the record on review of administrative proceedings is to understand the proceedings of the agency for the purpose of deciding the issues involved in the appeal. *See* 5 Jacob A. Stein & Glenn A. Mitchell & Basil J. Mezines, *Administrative Law* § 43.02[7] (2002). Though the applicable statutes and rules governing review of final decisions of administrative agencies and legislative or policymaking bodies are the same, as this is a review of a legislative body, for the purposes of this opinion, we look to guides discussing municipal records:

> The record of the enactment of an ordinance need not show the ordinance at length. Neither, it has been declared, need the record show informal discussions and offhand conversations. It is a reasonable rule that courts will not require the same exactness in keeping the records of a town as in the case of court records. So,

in keeping records of councils of small cities and towns the same exactness is not required as in the more important urban centers, because usually such records are kept by inexperienced persons.

5 Eugene McQuillin, *The Law of Municipal Corporations* § 14.03, at 5–6 (3rd ed.1996) (footnotes omitted).

Although the municipal record may be incomplete in certain particulars, if it appears from such record that the proceedings were regular and in substantial compliance with the charter and law, presumptions will be indulged in favor of its sufficiency and the validity of the corporate acts.

*Id.* § 14.03.10, at 7.

Minutes are the only evidence of official actions by a municipality. Proof of the governing body's acts may only be supplied by authenticated minutes of the meeting at which the action occurred, unless the minutes have been lost or destroyed. Where the minutes of a council meeting are recorded in the proper book or record by the officer whose duty it is to make and keep the records, they become in law a record and presumptively remain as such.

62 C.J.S. *Municipal Corporations* § 244, at 381–82 (1999) (footnotes omitted).

{20} New Mexico's own law supports this presumption of validity. As noted above, the standard of review on appeal of administrative decisions is deferential to the administrative or policymaking body and is reversed only upon a showing of fraud or arbitrary conduct. *Clayton,* 102 N.M. at 342, 695 P.2d at 492. The party challenging the policymaking body's decision bears the burden of proving fraud or arbitrary conduct. *Id.* "This standard reflects a respect for the governing body's legislative function." *Rowley,* 106 N.M. at 679, 748 P.2d at 976.

{21} Our review of case law reveals that several jurisdictions have specifically preferred written minutes rather than tapes when reviewing the actions of policymaking bodies. The State of Ohio has a Sunshine Law that requires the preparation, filing, and maintenance of a policymaking body's min-

utes and a Public Records Act that requires the policymaking body to permit public access to the minutes. *State ex rel. Long v. Council of the Vill. of Cardington,* 92 Ohio St.3d 54, 748 N.E.2d 58, 61 (2001); *see also* Ohio Rev.Code Ann. §§ 121.22 (2002), 149.43 (2002). The Ohio Supreme Court concluded in *Long* that the written, approved minutes made in accordance with the statutes were themselves the record to be considered by the court, not the tapes from which the minutes were made. 748 N.E.2d at 61–62. It reasoned that since the regular practice of the village council was to prepare typewritten minutes from tapes and notes made at meetings and then approve the typewritten minutes, not the tapes, at a subsequent meeting, then destroy the tapes after the minutes were approved, the written, approved minutes were the official record. *Id.* at 62. Likewise, the Court of Appeals of Michigan has found that its Open Meetings Act requires a policymaking body to keep minutes, but it does not require that multiple sets of minutes of public meetings be kept; therefore the policymaking body is not required to continue to maintain audiotapes of the public meetings if the minutes have been approved. *Kitchen v. Ferndale City Council,* 253 Mich. App. 115, 654 N.W.2d 918 (2002).

{22} These cases, as well as many others to like effect, have been decided in the context of reviewing the adequacy of governmental action for purposes of satisfying rules governing what the public has a right to know or precisely what action the government has taken. *See, e.g., Scott v. City of Seymour,* 659 N.E.2d 585, 590 (Ind.Ct.App. 1995) ("It is well-settled in Indiana that boards and commissions speak or act officially only through the minutes and records made at duly organized meetings."); *Paine v. Underwood,* 203 So.2d 593, 598 (Miss.1967) ("[M]inutes of [county board of supervisors] reciting its orders and judgments will be looked upon with indulgence, and although they may not be skillfully drawn, if by fair and reasonable interpretation their meaning can be ascertained, they will be [held to be] sufficient to answer the requirements of law."); *State ex inf. Nixon v. Corley,* 896 S.W.2d 931, 932 (Mo.1995) (en banc) ("when the law requires a political body to maintain

records of its actions, the record is not only the best evidence, but, primarily, is the only evidence by which the action of the board may be shown" (internal citation and quotation marks omitted)), *abrogated on other grounds by State v. Olvera,* 969 S.W.2d 715, 716 (Mo.1998) (en banc); *see also State ex rel. Schuler v. Dunbar,* 214 Neb. 85, 333 N.W.2d 652, 655–56 (1983) (finding minutes of meeting of board of county commissioners proper if the action taken at the meeting was in compliance with all the statutory requirements); *Maready v. City of Winston–Salem,* 342 N.C. 708, 467 S.E.2d 615, 630–31 (1996) (finding that the statutory phrase "full and accurate minutes" means a record of the actions taken by the board and evidence that the actions were taken according to proper procedures); *White v. Clinton County Bd. of Comm'rs,* 76 Ohio St.3d 416, 667 N.E.2d 1223, 1229 (1996) (recognizing that public bodies should be trusted with some latitude in preparation of minutes of their proceedings and that even "abstracts of the discussions indicating the identity of the speakers and the chronology and substance of their statements" are legitimate means of satisfying Ohio's Sunshine Law and Public Records Acts).

{23} Similar to the above-cited jurisdictions, New Mexico's Open Meetings Act contains a provision requiring that written minutes of public meetings be kept:

> The minutes shall include at a minimum the date, time and place of the meeting, the names of members in attendance and those absent, the substance of the proposals considered and a record of any decisions and votes taken that show how each member voted. All minutes are open to public inspection. . . . Minutes shall not become official until approved by the policy-making body.

Section 10–15–1(G). Our statutes also require that the clerk of a municipality record and keep custody of all proceedings, ordinances, and resolutions of the governing body. Section 3–13–1(A)(1). The New Mexico Administrative Code defines the minutes of meetings as follows:

> **C. Description:** records of official proceedings of governing bodies. Information

includes agenda, date, place, list of attendees and a summary of discussion and decisions. Official minutes may also include all informational attachments such as reports, surveys, proposal, studies and charts distributed to members for discussion and for use in making decision on agency policy, planning and administrative matters. Official minutes shall include only those documents/attachments that have been formally introduced as part of the records.

1.15.2.119 NMAC. The Code further specifies rules for retention of records:

> **D. Retention:**
>
> **(1) minutes of meetings of boards, commissions, or other policy making bodies, as defined in Open Meetings Act (Section 10–15–1 . . .):** permanent
>
> . . . .
>
> **(3) tapes or recordings of meeting:** after minutes have been transcribed and accepted at next meeting but no longer than two years after meeting date.

1.15.2.119 NMAC. Accordingly, New Mexico law requires that public bodies record and retain minutes, but suggests that tapes and recordings can be destroyed after the official minutes are adopted. Indeed, this is the policy that the Village follows.

{24} Our case, however, involves the adequacy of governmental action for the purpose of review on appeal. There are two reasons why we rule that compliance with the above authorities on governmental action satisfy the requirement of an adequate record for review on appeal in this case. First, at least one sister state has ruled that comprehensive minutes of the sort we have in this case are adequate for court review of the governmental proceedings. *See Dairy Prod. Servs., Inc. v. City of Wellsville,* 13 P.3d 581, 596 (Utah 2000). In that case, the appellate court noted that the minutes reflected the substance of the discussion, including a summary of the testimony of the witnesses. *Id.* Since the minutes contained a complete rendition of the proceedings, as well as the decision and order of the city council from which the district court was able to ascertain

the facts of the proceedings, the appellate court held that the record was adequate. *Id.*

{25} Second, we note that, even for court proceedings, our Supreme Court has recognized that a verbatim transcript is not necessary in deciding whether there is a sufficient record for appellate review. *State v. Fish,* 101 N.M. 329, 331, 681 P.2d 1106, 1108 (1984). For review to be meaningful, the record must only be of sufficient completeness to permit proper consideration of an appellant's claims. *State v. Herrera,* 84 N.M. 46, 47–48, 499 P.2d 364, 365–66 (Ct. App.1972). A record of sufficient completeness does not translate into a complete verbatim transcript. *State v. Ibarra,* 116 N.M. 486, 489, 864 P.2d 302, 305 (Ct.App.1993) (upholding the constitutionality of the Court of Appeals' process of deciding a criminal case on summary calendar using only the record proper, docketing statement, and party memoranda).

{26} Our review of the minutes of the Village proceedings in the record proper reveal clear summaries of discussions, motions, and votes taken at each meeting, with reference to the names of all speakers. The minutes include a recitation of what each citizen said at meetings where the public was invited to speak and ask questions. The minutes also contain references to the procedure followed and the statutes governing the Village's decisions, sufficient to determine whether the Village complied with its statutory mandates. For example, on December 11, 1997, when the assessment district process started, the minutes reveal a discussion of the proposed new assessment district and a copy of the resolution adopted at that meeting, creating the district and directing the Village Bond Counsel to prepare initial documents. In December of 1998 and February of 1999, there were two special meetings called to discuss and accept public comment on the initial assessments that had been sent to affected individuals in the community. The minutes of these two meetings contain long summaries of status reports to the community and include complete summaries of comments from 34 citizens with responses from Village officials, Village Council members, and the project engineers. The next

day, at the regular council meeting, the council adopted Resolution 1999–14 after a long discussion, creating the final assessment district. The final public hearing was held on June 5, 2000. The minutes reveal discussion and elimination of several parcels from the assessment district. Then, there is a detailed summary from the bond attorney, followed by his answers to councilors' questions, then detailed summaries of the comments and protests of 11 citizens. The council convened a special meeting on June 13, 2000, with the express purpose of voting on Resolution 2000–15. The minutes of that meeting, attached to the Village's response to the statement of issues below, reveal a short discussion and passage of the Resolution. The Resolution itself indicates that it was passed at the June 13 special meeting, and it contains brief factual and legal bases for the Resolution. The record contains complete minutes of many more such meetings between the December 1997 meeting and the June 2000 meeting.

{27} We note, too, that though the Land Owners argue that the minutes are insufficient for appellate review, they have not objected to the contents of the minutes, either below or on appeal; have not argued that the minutes are incomplete or that they are inadequate representations of the proceedings; and did not claim in their statement of issues below that the record was insufficient for the district court's review. We consider this lack of objection of critical importance in our determination that the minutes contained in the record are adequate.

{28} In light of the deference accorded to policymaking bodies on appeal, the widespread acceptance in other jurisdictions of duly recorded minutes as official transcripts of the proceedings, this Court's acknowledgment that meaningful appellate review does not require a verbatim transcript, and the apparent completeness of the minutes submitted in the record proper, we see no reason to demand that policymaking bodies in New Mexico be required to maintain records that are not otherwise mandated by statute or by agency rules. We see no reason to presume that duly approved minutes do not

reflect what the policymaking body actually did during a public meeting. We hold that the minutes of the proceedings of the Village Council, that have been prepared according to statutory mandate and have been duly approved by the Village Council, are the record and serve as the official transcript to be reviewed by the district court acting in its appellate capacity pursuant to Section 39-3-1.1 and Rule 1-074. We therefore remand to the district court to conduct a review of this appeal, using the approved minutes and all documents and attachments that were formally introduced or incorporated as part of the public records as the official transcript of the Village proceedings.

{29} In making our decision, we reiterate that we are mindful of the fact that the purpose of keeping minutes of meetings of policymaking bodies is different than the purpose of preserving a record for appellate review. *See, e.g., Gutierrez v. City of Albuquerque,* 96 N.M. 398, 401, 631 P.2d 304, 307 (1981) (stating that the purpose of the Open Meetings Act is to allow public scrutiny of governmental bodies by allowing public attendance at meetings); *Herrera,* 84 N.M. at 47-48, 499 P.2d at 365-66 (finding that the record must be of sufficient completeness for meaningful review). Some minutes of meetings of policymaking bodies may not be "sufficiently complete" for review. Nothing in this opinion should be construed to presume that all duly approved minutes are *per se* adequate for appellate review. Nor should this opinion be construed as precluding a Village or other policymaking body from taping or making verbatim transcripts of its meetings.

**Issue Two—Statement of Basis for Decision**

{30} The district court found that the Village did not include a statement of the factual or legal basis for the decisions and orders passed as Resolutions 1999-14 and 2000-15, contrary to the provision in Section 39-3-1.1 requiring "a written decision that includes an order granting or denying relief and a statement of the factual and legal basis for the order." Section 39-3-1.1(B)(1). It appears that the district court concluded that the

statute requires separate documents in addition to the Resolutions themselves. The Village argues that the Resolutions are the mandated written decision and that they contain everything Section 39-3-1.1 requires.

{31} Interpretation of a statute is a question of law which this Court reviews de novo. *Morgan Keegan Mortgage Co. v. Candelaria,* 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066. The plain meaning rule requires a court to give effect to the statute's language and refrain from further interpretation when the language is clear and unambiguous. *Sims v. Sims,* 1996-NMSC-078, ¶ 17, 122 N.M. 618, 930 P.2d 153.

{32} Section 39-3-1.1(B) reads:

B. Upon issuing a final decision, an agency shall promptly:

(1) prepare a written decision that includes an order granting or denying relief and a statement of the factual and legal basis for the order;

(2) file the written decision with the official public records of the agency; and

(3) serve a document that includes a copy of the written decision and the requirements for filing an appeal of the final decision on:

(a) all persons who were parties in the proceeding before the agency; and

(b) every person who has filed a written request for notice of the final decision in that particular proceeding.

{33} Though Section 39-3-1.1 was promulgated to provide a uniform and meaningful review of agency decisions, it does not mandate a particular form for the written decision required in Section 39-3-1.1(B)(1). Section 39-3-1.1, at least as it applies to legislative bodies, plainly requires a document that adequately informs the affected parties of the action of the policymaking body to and alerts the parties that they may proceed with an appeal of the legislative order. Village Resolutions 1999-14 and 2000-15 were both officially adopted at public meetings after a lengthy and public process mandated by the Improvement Districts Act. A reading of each document reveals that each contains an order in the form of resolutions, and each contains both facts and law. Reso-

lution 1999–14 cites Sections 3–33–1 through –43 as its legal authority for deciding this Resolution, and includes facts such as the approximate cost of the project and the names of the engineers who completed the study. It outlines the procedure that the Village followed in arriving at this Resolution. The Resolution also contains a statement confirming that the Village Council examined the plans, costs, and plat, and has accepted them. It incorporates those plans in the Resolution, noting that the plans are available for public examination. Similarly, Resolution 2000–15 cites Sections 3–31–1 through –43 as its legal authority, and includes information about the Village's consideration of all protests, including a finding that some are without merit while others had merit, and its confirmation of the revised assessment roll, noting that the roll is available for public examination. Both Resolutions include written notification of a right to appeal the decisions therein to the district court. Though Resolution 1999–14 does not include reference to the statute under which appellants may proceed, Resolution 2000–15 specifically invokes Section 39–3–1.1.

{34} This is sufficient to meet the requirements of Section 39–3–1.1(B)(1). It is unrealistic and unnecessary to require a small Village Council to prepare a document summarizing hundreds of pages of studies, reports, and minutes that took years to compile. Indeed, this particular notice was adequate to alert the Land Owners here, as evidenced by their timely appeal to the district court. We note again that "the formal findings and order" are the formal record of the Village, *Dairy Prod. Servs.*, 13 P.3d at 596, and that the Village speaks officially "through the minutes and records made at duly organized meetings." *Scott*, 659 N.E.2d at 590. The Village need not do more. Therefore, we hold that the Resolutions 1999–14 and 2000–15 are a statement of the legal and factual basis for the Village's creation and effectuation of the special assessment district in accordance with Section 39–3–1.1. We further hold that a policymaking body need not prepare and approve a separate or more detailed document for the purposes of Section 39–3–1.1 if, through their regular procedure or through statutory mandate, they produce a duly approved order or resolution containing the requirements of Section 39–3–1.1.

## CONCLUSION

{35} We reverse the district court's order on appeal and remand for the district court to conduct a review of this appeal under the standard of review outlined in this opinion, using the official minutes of the Village proceedings as the transcript for review and Resolutions 1999–14 and 2000–15 as satisfaction of the mandate of Section 39–3–1.1 for a statement of factual and legal basis. We remind the parties that we are not ruling on whether or not the Village fulfilled its statutory obligations in creating and effectuating the assessment district or on the sufficiency of the evidence. That is the province of the district court on remand. We hold only that, pursuant to Rule 1–074, the duly approved minutes of the Village proceedings are the official transcript to be used for appellate review, and that, pursuant to Section 39–3–1.1, the duly approved Resolutions 1999–14 and 2000–15 are the Village's written statements of the factual and legal basis for their orders.

{36} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and CELIA FOY CASTILLO, Judges.